# EXHIBIT C

# STATE OF EMERGENCY DECLARATION

*A State of Emergency is hereby declared in* Broome County
*effective at:*                                             *(area within municipality, or entire municipality)*

12:00PM  *on* May 11, 2023               .
   *(time)*          *(date)*

*This State of Emergency has been declared due to*
The County of Broome is experiencing a housing crisis due to the limited number of temporary and permanent housing, furthermore

Broome County is not capable of receiving and sustaining any number of migrants and / or asylum seekers.
                                    *(description of situation)*

*This situation threatens the public safety.*

*This State of Emergency will remain in effect for thirty (30) days or until rescinded by a subsequent order.*

*As the Chief Executive of* Broome County                                             ,
                                    *(name of municipality)*

*I,* Jason T. Garnar                                    *, exercise the authority given me under*
                *(name of Chief Executive)*

*Section 24 of the New York State Executive Law, to preserve the public safety and hereby render all required and available assistance vital to the security, well-being, and health of the citizens of this Municipality.*

*I hereby direct all departments and agencies of*

Broome County                                    *to take whatever steps necessary to*
                *(name of municipality)*

*protect life and property, public infrastructure, and provide such emergency assistance deemed necessary.*

Jason T. Garnar
         *(Name)*                                    *(Signature)*

County Executive                    May 11, 2023
         *(Title)*                                    *(Date)*

# EMERGENCY ORDER

Local Emergency Order for Broome County:

I, Jason T. Garnar, the Chief Executive of Broome County, in accordance with a declaration of a State of Emergency issued on May 11, 2023, and pursuant to Section 24 of New York State Executive Law, do herby order:

**Prohibition of foreign municipal programs that burden the County.**

A. No municipality may make contracts with persons, businesses, or entities doing business within the County to transport migrants or asylum seekers to locations in the County, or to house persons at locations in the County for any length of time without the express written permission of the County Executive or his designee. In addition, no person or entity may act on behalf of any municipality or in performance of a municipal program, or other act funded by a municipality, to perform an act in violation of this subsection.

B. No hotel, motel, owner of a multiple dwelling, or shelter in Broome County is permitted to contract or otherwise engage in business with any other municipality other than the County of Broome (an "external municipality") for the purpose of providing housing or accommodations for migrants or asylum seekers without a license granted by the County. This prohibition extends to any person or entity participating in an external municipality's government program, or a contract or service funded by an external municipality or acting on behalf of any external municipality.

    1. Licenses will be granted only by the Broome County's Health Department Director (the Director). The Director may enlist the services of any other agency within the executive branch of the County government to perform the duties necessary to affect this provision.

    2. Licenses will only be granted where, to the satisfaction of the Director, both the applicant and the foreign municipality demonstrate that:

        i. The contract provides that the migrants or asylum seekers will be returned to the foreign municipality from which they arrived or another location outside the County, within fifteen days; and

        ii. The foreign municipality demonstrates to the County that it has sufficient funding to sustain the needs of the migrants or asylum seekers during the time of their stay; and

        iii. The foreign municipality agrees to assume any costs expended by any municipality in the County ("domestic municipalities") including the County itself, for the care, welfare, law enforcement interactions, or other expenses related to municipal interaction with the migrants or asylum seekers upon demand; and

        iv. The applicant and the foreign municipality each have a performance bond for the conditions set by the license in the amount of $2,000 per migrant or asylum seeker being housed or boarded at the applicant's facility.

    3. The conditions described in this section will not apply to any contract directly between the foreign municipality and the County.

    4. License renewal will be at the sole discretion of the Director, after consideration of the purpose and intent of the State of Emergency that instigated this Emergency Order.

C. <u>Remedies.</u>

    1. Appearance tickets. The Broome County Sheriff's Office is authorized to issue appearance tickets for any violation of this Emergency Order for the penalty prescribed by NYS Executive Law § 24(5).

    2. Civil penalties. In addition to those penalties prescribed by NYS Executive Law § 24(5), any person who violates any provision of this Emergency Order or any term or condition of any license issued pursuant to this Emergency Order, shall be liable to a civil penalty, to be determined by a process set by the Director, of not more than $2,000 per migrant/asylum seeker housed by the foreign municipality or other violator, for each day or part thereof during which such violation continues. The civil penalties provided by this subdivision shall be recoverable in an action instituted in the name of this County and initiated by the Director.

    3. Abatement. Regardless of any other remedy or relief brought by the County for any violation, the Director is authorized to direct the County Attorney to commence actions or proceedings in the name of the County, in a court of competent jurisdiction, to abate any violation of, or to enforce any provision of this Emergency Order.

D. Remedies not exclusive.

    1. No remedy or penalty specified in this Emergency Order shall be the exclusive remedy or remedy available to address any violation described in this Emergency Order.

    2. Each remedy or penalty specified in this Emergency Order shall be in addition to, and not in substitution for or limitation of, the other remedies or penalties specified in this Emergency Order or in any other applicable law.

    3. Any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any other remedy or penalty specified in this Emergency Order or in any other applicable law.

    4. In particular, but not by way of limitation, each remedy and penalty specified in this section shall be in addition to, and not in substitution for or limitation of, the penalties specified in NYS Executive Law § 24, and any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any penalty specified in NYS Executive Law § 24.

Emergency Order #1

**Section 3. <u>Punishment</u>**

In accordance with Executive Law Section § 24, any person who knowingly violates the provisions of this order shall be guilty of a Class B Misdemeanor.

**Section 4. <u>Effective Date</u>**

This Executive Order shall take effect immediately.

**Section 4. <u>Duration of Local Emergency Order</u>**

The Local Emergency Order shall remain in effect for five days unless sooner modified, extended, or revoked, and may be extended for additional periods not to exceed five days during the pendency of the local state of emergency.

Failure to obey this order is a criminal offense, punishable by law under New York State Executive Law §24(5).

Signed this the 11th day of May 2023, at 12:00 o'clock P.M. in, Broome County, New York.

| | |
|---|---|
| _____Jason T. Garnar_____ | |
| County Executive | |
| | |
| _____Patrick Dewing_____ | |
| *(Witness)* | |
| _Director, Office of Emergency Services_ | |



## COUNTY OF DUTCHESS

**William F.X. O'Neil**
*County Executive*

## MEMORANDUM

---

**TO:**     Leigh Wager, Clerk of the Legislature
Brad Kendall, Dutchess County Clerk
Dana Smith, Dutchess County Dept of Emergency Response

**FROM:**   Cindi Halupke, Executive Secretary

**RE:**     Executive Order 5 of 2023

**DATE:**   May 19, 2023

Attached please find Executive Order 5 of 2023.   Originals to follow in Interoffice Mail.

Please let me know if you have any questions or need additional information.

Thank you.


Attachments



**William F. X. O'Neil**
**Acting Dutchess County Executive**

## EXECUTIVE ORDER NO. 5 of 2023

## DECLARATION OF A LOCAL STATE OF EMERGENCY

## May 18, 2023

**WHEREAS,** a national immigration crisis in the United States has resulted in thousands of migrants and/or asylum seekers entering the United States from their countries of origin, and such individuals enter the U.S. with no plans for shelter, and they may require medical, social services, and legal services, but have no immediate plan or access to such services without government assistance, and

**WHEREAS,** thousands of shelter-seeking individuals have arrived in the City of New York within the past year to the present date, with the City of New York alone reporting that it is currently providing temporary housing for in excess of 36,000 migrants and/or asylum seekers who have crossed the border entering of the United States, and

**WHEREAS,** as a result of thousands of migrants and/or asylum seekers arriving in New York City after crossing the border, with no immediate plans for shelter, Mayor of the City of New York, Eric Adams, issued an Emergency Executive Order No. 224 effective October 7, 2022, and

such order has been extended every thirty (30) days, most recently on May 5, 2023, given the continuing "unprecedent humanitarian crisis that requires it to take extraordinary measures to meet the immediate needs of the asylum seekers", and

**WHEREAS,** on May 11, 2023, representatives from the City of New York, including Mayor Adams, advised Dutchess County, and other counties, that the City has received over 65,000 migrants and asylum seekers in the past year who require housing and services, and consequently, the City is housing in excess of 39,000 people, using 130 hotels as emergency shelters, opened 8 humanitarian relief shelters, and is opening "tents" for shelters in order to accommodate the influx of migrants and/or asylum seekers who have crossed the United States border seeking shelter and services, and

**WHEREAS,** in anticipation of an expected "surge" of migration into the United States, and by extension, the State of New York, comprising the "imminent arrival" of "several thousand additional people seeking shelter each week" New York State Governor Kathy Hochul declared a Disaster Emergency In the State of New York by Executive Order No. 28 of 2023, effective May 9, 2023, and

**WHEREAS,** Governor Hochul recognized in the Executive Order No. 28 of 2023 that "local governments are unable to adequately respond" to this humanitarian crisis, and

**WHEREAS,** the City of New York admitted that it cannot adequately address the needs of such migrants and/or asylum seekers transferred to New York City, and has publicly advertised a brochure, "Four-Month Temporary Housing Options for Asylum Seekers: Nearby New York

Counties" whereby the City of New York busses migrants and/or asylum seekers to Hudson Valley Region counties and the City has arranged for "temporary housing and support services" including meals, case workers, laundry service, and hygiene kits, but only for a period of up to four months, and

**WHEREAS**, according to the City of New York, the needs of the migrants and asylum seekers has surpassed the availability of healthcare, mental health, social services, and housing resources the City can provide them, requiring the City to outsource the provision of certain of these services to nongovernmental organizations, and

**WHEREAS,** the healthcare, mental health, social services, and housing resources in the City of New York far exceed that which is available in the County of Dutchess, and

**WHEREAS**, the City of New York has not contracted with, sought to cooperate with, or provided Dutchess County with the City's detailed plans or reasonable notice of its plans to transport migrants and/or asylum seekers to Dutchess County, although these individuals require immediate shelter and a myriad of services for an indefinite period of time, and

**WHEREAS**, nor has the City of New York provided the County of Dutchess with any information about the identity, immigration status, number, ages, and most importantly, the general needs, of such homeless individuals which it desires to transport to Dutchess County nor has the City of New York advised local or State law enforcement of the date, time, and location of their impending arrival with sufficient time to prepare to meet their needs and ensure a peaceful and safe transport to Dutchess County, and

**WHEREAS**, rather, the County of Dutchess, local law enforcement, and local governments within the County of Dutchess have received conflicting information from the City of New York and hotel operators in Dutchess County concerning the date, time, location, and number of homeless individuals arriving in Dutchess County, which may incite public panic, frustrates the County's ability to plan for the arrival, and creates an immediate apprehension of a public emergency which imperils public safety, and

**WHEREAS**, at 6:51 p.m. on May 17, 2023, Christopher Ellis, Director of State Legislative Affairs in the Office of the Mayor of the City of New York, e-mailed Acting Dutchess County Executive William F. X. O'Neil advising him that a bus of individuals related to the "Asylum Seeker update from NYC" is expected to arrive in Poughkeepsie, New York, Dutches County, on or about 4:00 p.m. on May 18, 2023, to the Dutchess County Red Roof Inn, located at 2349 South Road, Poughkeepsie NY, with a potential capacity of 44 persons arriving, and

**WHEREAS**, in juxtaposition from the information received from Mr. Ellis, the owner of the Red Roof Inn, located at 2349 South Road Poughkeepsie, NY confirmed that the Inn lacks vacancies to accommodate 44 individuals on May 18, 2023, but further provided that he is in negotiation with the City of New York for the arrival of migrants and/or asylum seekers on Sunday, May 21, 2023, and

**WHEREAS**, the City of New York would not confirm or deny whether it intended to bus homeless migrants and/or asylum seekers on Sunday, and

4

**WHEREAS**, the County is ill-equipped to meet the needs of homeless individuals who require immediate shelter and social services and who may remain in Dutchess County for indefinite duration, and the public safety is imperiled by the City of New York's abject failure to communicate with the County, by providing less than 24 hours' notice to Dutchess County of the impending arrival of these individuals, nor credible information about the date, time or location of their appearance, nor information about their identifying information, immigration status, or general needs, and

**WHEREAS**, migrants and/or asylum seekers transported to Dutchess County from the City of New York may likely require more services within the City's presently-intended four month stay than that which is offered by the City of New York, namely, additional physical and behavioral health care beyond "hygiene kits" and "remote…telehealth", social services needs beyond a "case worker", transportation, law enforcement protection, and legal assistance, all of which could impact County government operationally and/or fiscally at every level of County government, and

**WHEREAS**, after the expiration of the initial four-month temporary relocation to Dutchess County, there is no reason to believe that migrants and/or asylum seekers will leave Dutchess County after New York City ceases to pay for the housing, meals, and social services needs for these individuals, and the Dutchess County social services district will be legally compelled to provide such services to those individuals so long as they remain without shelter, and

**WHEREAS**, Dutchess County is not capable of receiving and sustaining such volume of shelter-seeking individuals that New York City presently intends, or hereafter transports, to this County, for an unknown duration likely to exceed four months, given that the County is experiencing a housing crisis and the County's limited number of temporary housing shelter beds are already at maximum capacity and the County's affordable housing stock is at critically low levels, and

**WHEREAS**, Dutchess County local codes do not allow the use of hotels, motels, or other short-term rentals presently permitted as temporary residences to be constructed, enlarged, developed, improved, converted, used or operated for any reason other than the designated purpose authorized by permit, including as long-term housing, a rooming house, an emergency shelter, or a homeless shelter, and therefore New York City's transportation of individuals to Dutchess County hotels, motels or short-term rentals, where their needs for shelter and social services are of an indefinite duration, may be illegal, and

**WHEREAS**, Dutchess County anticipates civil disobedience and protesting on this issue, both for and against the transportation of migrants and/or asylum seekers to Dutchess County, which creates a reasonable apprehension of danger of a public emergency and imperils public safety, and

**WHEREAS**, there is reasonable apprehension of immediate danger of a public emergency, because an unknown number of persons will be transported to Dutchess County, and Dutchess County will be responsible for the public safety of these persons and all others affected in Dutchess County, and

**WHEREAS**, through the enforcement of local sanitary code, zoning code, and building code, migrants and/or asylum seekers may face refusal, removal, or eviction from hotels, motels, or short term rentals converted into emergency shelters, homeless shelters, or rooming houses, resulting in homelessness for vulnerable migrants and/or asylum seekers, and

**WHEREAS**, due to all the aforementioned circumstances, I find that there is a public emergency or reasonable apprehension of immediate danger thereof, and that the public safety is imperiled thereby, for not only the migrant and/or asylum seekers, but also to other affected residents of Dutchess County, on the basis that poorly planned and unregulated migration to Dutchess County by homeless migrants and/or asylum seekers requiring shelter and services for indefinite durations poses a grave risk to the social, health, and emergency services resources of the County, and

**WHEREAS**, these circumstances constitute an imminent peril to the public health and safety requiring the adoption of special rules, regulations, procedures and restrictions as emergency measures, and

**WHEREAS**, pursuant to the powers vested in me as County Executive by Article III of the Dutchess County Charter, Section 3.05(d) of the Administrative Code and pursuant to the provisions contained in New York Executive Law §24, which authorizes the Chief Executive to promulgate Local Emergency Orders upon a finding that the public safety is imperiled by the event of a public emergency or in the event of reasonable apprehension of immediate danger thereof, to protect life and property and to bring an emergency situation under control;

7

**NOW, THEREFORE**, by the power vested in me as Chief Executive of Dutchess County, it is

hereby ordered:

Section 1. <u>Local State of Emergency</u>.

A Local State of Emergency is hereby declared to exist within the County of

Dutchess and shall remain in effect for thirty (30) days unless it is terminated,

rescinded or modified at an earlier date.

Section 2. <u>Punishment.</u>

In accordance with Executive Law Section 24, any person who knowingly

violates the provisions of this order shall be guilty of a Class B Misdemeanor.

Section 3. <u>Effective Date</u>

This Executive Order shall take effect immediately.

Dated: this _18_ day of _may_, 20_23_
Poughkeepsie, New York

WILLIAM F. X. O'NEIL
ACTING COUNTY EXECUTIVE
DUTCHESS COUNTY
COUNTY OFFICE BUILDING
POUGHKEEPSIE, NEW YORK 12601

**L. Matthew Landers**
County Manager
Old Court House, 7 Main Street
Batavia, New York 14020
Office:  585-344-2550 Ext. 2204



**Tammi Ferringer**
Assistant County Manager
Old Court House, 7 Main Street
Batavia, New York 14020
Office:  585-344-2550 Ext. 2200

County of Genesee
State of New York

### State of Emergency Declaration

"A State of Emergency is herewith declared within the jurisdiction of:

### Genesee County

State of New York, for the period of time beginning at 12:00 p.m. on May 17, 2023, and will remain in effect for thirty (30) days or until rescinded by subsequent order.

The State of Emergency has been declared for the County of Genesee arising from New York City's actions to rapidly divert the number of migrants to other Counties in New York State to unsustainable levels. Genesee County does not have the capability to receive or sustain any number of migrants and/or asylum seekers.

This situation is a threat to public safety.

Section 24 of the New York State Executive Law, to preserve the public safety and hereby render all required and available assistance vital to the security, well-being, and health of the citizens of this Municipality.

Additional local emergency orders may be promulgated by the County Manager for Genesee County during this state of emergency in order to protect life and property and to bring the emergency condition under control."

Dated: May 17, 2023

L. Matthew Landers
Genesee County Manager

# A DECLARATION OF STATE OF EMERGENCY

Posted on May 17, 2023



## County of Greene
## Patrick S. Linger
*Chairman,* **Greene County Legislature**

A State of Emergency is herewith declared within the jurisdiction of the County of Greene, State of New York, effective immediately, May 17, 2023.

The State of Emergency has been declared due to failed Federal Policy(ies) together with New York City's mismanagement and/or underestimation of the impact of inviting "asylum seekers" to the city, resulting in New York City planning to relocate many migrants and asylum seekers to counties, outside of and nearby New York City; including Greene County.

Greene County has approximately THREE ONE HUNDREDTHS (3/100's) of the population of New York City and an economy and infrastructure consistent with that stunning differential.

Greene County is incapable of receiving and sustaining the volume of migrants and/or asylum seekers that New York City intends to deliver.

Greene County is already facing significant shortages of housing, medical care and transportation; together with a growing homeless population.

There is no hospital located within the geographic boundaries of Greene County.

Additional local Emergency Orders will be promulgated by the Chairman of the Greene County Legislature during this State of Emergency to further protect life and property a to bring the emergency conditions(s) under control.



Privacy - Terms

Patrick S. Linger
*Chairman*, Greene County Legislature

Dated: May 17, 2023

Witness by: _____
Shaun Groden
*Greene County Administrator*

Notes:

1. This State of Emergency must be filed within seventy-two hours with the Clerk of the County legislature, Greene County Clerk, Office of the Secretary of State and the State Office of Emergency Management within the Division of Homeland Security and Emergency Services.
2. Anyone who knowingly violates any emergency order is guilty of a class B misdemeanor.

STATE OF NEW YORK }
                   } ss.:
COUNTY OF GREENE }

I, the undersigned,

DO HEREBY CERTIFY that I have compared the above copy of a Declaration of State of Emergency (Effective immediately May 17th, 2023) signed by the Chairman of the Greene County Legislature on May 17th, 2023, with the original record in this office and that the same is a correct transcript thereof and of the whole of said original record.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the official seal of said Greene County Legislature this 17th day of May, 2023.

Tammy L. Sciavillo
Acting Clerk, Greene County Legislature

## Local State of Emergency – Emergency Order No. 1 (Sustainable Migration)

**Posted in Government Operations**



OFFICE OF THE CHAIRMAN
GREENE COUNTY LEGISLATURE
411 Main Street
Catskill, New York 12414

LOCAL STATE OF EMERGENCY

EMERGENCY ORDER NO. 1

(Sustainable Migration)

On May 17, 2023, a State of Emergency was declared for the County of Greene arising from New York City's program to rapidly increase the number of migrants in the County to unsustainable levels.

Pursuant to NYS Executive Law §24, when a State of Emergency is in effect, the Chairman of the County Legislature may promulgate local emergency orders to protect life and property or to bring the emergency situation under control.   By law upon reconsideration of all the relevant facts and circumstances, such an order may be extended for additional periods not to exceed five days each during the pendency of the State of Emergency.

If it were allowed for the City of New York or other municipalities to simply flood the County with persons in need of services, as described in the related Declaration, this crisis would only worsen.

Therefore, by the power vested in me as Chairman of the Greene County Legislature, it is hereby ordered:

*Section 1. Prohibition of foreign municipal programs that burden the County.*

A. No municipality may make contracts with persons, businesses, or entities doing business within the County to transport migrants or asylum seekers to locations in the County, or to house persons at locations in the County for any length of time without the express written permission of the Chairman of the Greene County Legislature. In addition, no person or entity may act on behalf of any municipality or in performance of a municipal program, or other act funded by a municipality, to perform an act in violation of this subsection.

B. No hotel, motel, or owner of a multiple dwelling in Greene County is permitted to contract or otherwise engage in business with any other municipality other than the County of Greene (an "external municipality") for the purpose of providing housing or accommodations for migrants or asylum seekers without a license granted by the County. This prohibition extends to any person or entity participating in an external municipality's government program or a contract or service funded by an external municipality or acting on behalf of any external municipality.

1. Licenses will be granted only by the County Administrator of the County of Greene (the Administrator). The Administrator may enlist the services of any other agency within the executive branch of the County government to perform the duties necessary to effect this provision.

2. Licenses will only be granted where, to the satisfaction of the Administrator, both the applicant and the foreign municipality demonstrate that:

a. The contract provides that the migrants or asylum seekers will be returned to the foreign municipality from which they arrived or another location outside the County, within fifteen days;

b. The foreign municipality demonstrates to the County that it has sufficient funding to sustain the needs of the migrants or asylum seekers during the time of their stay; and

c. The foreign municipality agrees to assume any costs expended by any municipality in the County ("domestic municipalities') including the County itself, for the care, welfare, law enforcement interactions or other expenses related to municipal interactions, or other expenses related to municipal interaction with the migrants or asylum seekers upon demand.

d. The applicant and the foreign municipality each have a performance bond for the conditions set by the license in the amount of $2,000.00 per migrant or asylum seeker being housed or boarded at the applicant's facility.

3. The conditions described in this section will not apply to any contract directly between the foreign municipality and the County.

4. License renewal will be at the sole discretion of the Administrator, after consideration of the purpose and intent of the State of Emergency that instigated this Emergency Order.

C. Remedies.

1. Appearance tickets. The Sheriff, the Administrator and the Administrator's designees are authorized to issue appearance tickets for any violation of this Emergency Order for the penalty prescribed by NYS Executive Law §24(5).

2. Civil Penalties. In addition to those penalties prescribed by NYS Executive Law §24(5), any person who violates any provision of this Emergency Order or any term or condition of any license issued pursuant to this Emergency Order, shall be liable to a civil penalty, to be determined by a process set by the Administrator, of not more than $2,000.00 per migrant/asylum seeker housed by the foreign municipality or other violator, for each day

and part thereof during which such violation continues. The civil penalties provided by this subdivision shall be recoverable in an action instituted in the name of this County and initiated by the Administrator.

3. Abatement.   Regardless of any other remedy or relief brought by the County for any violation, the Administrator is authorized to direct the County Attorney to commence actions or proceedings in the name of the County, in a Court of competent jurisdiction, to abate any violation of, or to enforce a provision of this Emergency Order.

D. Remedies not exclusive.

1. No remedy or penalty specified in this Emergency Order shall be the exclusive remedy or remedy available to address any violation described in this Emergency Order.

2. Each remedy or penalty specified in this Emergency Order shall be in addition to, and not in substitution for or limitation of, the other remedies or penalties specified in this Emergency Order or in any other applicable law.

3. Any remedy or penalty specified in this section may be pursued at any time,   whether prior to, simultaneously with, or after the pursuit of any other remedy or penalty specified in this Emergency Order or in any other applicable law.

4. In particular, but not by way of limitation, each remedy and penalty specified in this section shall be in addition to, and not in substitution for or limitation of, the penalties specified in NYS Executive Law §24, or any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any penalty specified in NYS Executive Law §24.

E. Notifications.   In addition to such other powers or duties, the Sheriff of Greene County may consider in the exercise of the Sheriff's duties with respect to this Emergency Order, the Sheriff is authorized and directed by this order to make limited stops to notify persons

suspected of transporting migrants or asylum seekers into the County in violation of the restrictions and regulations of this Emergency Order, and to similarly, notify the owners and operators of facilities suspected of housing any migrants or asylum seekers or seeking or entering agreements with external municipalities, without the license required by this Emergency Order.

### Section 3.  *Effective Date*

This local Emergency Order shall take effect immediately.

### Section 4.  *Duration of Local Emergency Order*

The Local Emergency Order shall remain in effect for five days unless sooner modified, extended, or revoked, and may be extended for additional periods not to exceed five days during the pendency the local state of emergency.

### Section 5. *Common* Name

This Order may be referred to as the "Greene County Sustainable Migration Protocol".

Dated:  May 17, 2023

*Patrick S. Linger*
*Chairman*, Greene County Legislature

STATE OF NEW YORK }
                  } ss.:
COUNTY OF GREENE }

I, the undersigned,

DO HEREBY CERTIFY that I have compared the above copy of a State of Emergency Declaration – Emergency Order No. 1 (Sustainable Migration) signed by the Chairman of the Greene County Legislature on May 17th, 2023, with the original record in this office and that the same is a correct transcript thereof and of the whole of said original record.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the official seal of said Greene County Legislature this 17th day of May, 2023.

Tammy L. Sciavillo
Acting Clerk, Greene County Legislature

# STATE OF EMERGENCY DECLARATION

**A State of Emergency is hereby declared in** _Herkimer County_____
**effective at:**
                                             **(area within municipality, or entire municipality)**

_3:00 p.m.___ **on** _May 12, 2023_____._
**(time)**          **(date)**

**This State of Emergency has been declared due to**
The County of Herkimer is experiencing a housing crisis due to the limited number of temporary and permanent housing.

Furthermore, Herkimer County is not capable of receiving or sustaining any number of migrants and/or asylum seekers.
                            **(description of situation)**

**This situation threatens the public safety.**

**This State of Emergency will remain in effect for thirty (30) days or until rescinded by a subsequent order.**

**As the Chief Executive of** _____ Herkimer County _____,
                           **(name of municipality)**

**I,** _____ Vincent J. Bono _____, **exercise the authority given me under**
               **(name of Chief Executive)**

**Section 24 of the New York State Executive Law, to preserve the public safety and hereby render all required and available assistance vital to the security, well-being, and health of the citizens of this Municipality.**

**I hereby direct all departments and agencies of**

_____ Herkimer County _____ **to take whatever steps necessary to**
           **(name of municipality)**

**protect life and property, public infrastructure, and provide such emergency assistance deemed necessary.**

| | |
|---|---|
| Vincent J. Bono | _Vincent J Bono 3pm_ (signature) |
| **(Name)** | **(Signature)** |
| Chairman of the Herkimer County Legislature | May 12, 2023 |
| **(Title)** | **(Date)** |

# EMERGENCY ORDER

### Executive Order # 2023-01

**Local Emergency Order for Herkimer County**

I, Vincent J. Bono, Chairman of the Herkimer County Legislature, in accordance with a declaration of a State of Emergency issued May 12, 2023, and pursuant to Section 24 of New York State Executive Law, do hereby order:

## Section 1. <u>Prohibition of foreign municipal programs that burden the County.</u>

A. No municipality may make contracts with persons, businesses, or entities doing business within the County to transport migrants or asylum seekers to locations in the County, or to house persons at locations in the County for any length of time without the express written permission of the Chairman of the Herkimer County Legislature. In addition, no person or entity may act on behalf of any municipality or in performance of a municipal program, or other act funded by a municipality, to perform an act in violation of this subsection.

B. No hotel, motel, or owner of a multiple dwelling in Herkimer County is permitted to contract or otherwise engage in business with any other municipality other than the County of Herkimer (an "external municipality") for the purpose of providing housing or accommodations for migrants or asylum seekers without a license granted by the County.

C. Remedies.

1. Appearance tickets. The Sheriff is authorized to issue appearance tickets for any violation of this Emergency Order for the penalty prescribed by NYS Executive Law § 24(5).

2. Civil penalties. In addition to those penalties prescribed by NYS Executive Law § 24(5), any person who violates any provision of this Emergency Order or any term or condition of any license issued pursuant to this Emergency Order, shall be liable to a civil penalty, of not more than $2,000 per migrant/asylum seeker housed by the foreign municipality or other violator, for each day or part thereof during which such violation continues. The civil penalties provided by this subdivision shall be recoverable in an action instituted in the name of this County and initiated by the County Attorney.

3. Abatement. Regardless of any other remedy or relief brought by the County for any violation, the County Attorney to commence actions or proceedings in the name of the County, in a court of competent jurisdiction, to abate any violation of, or to enforce any provision of this Emergency Order.

D. Remedies not exclusive.

1.   No remedy or penalty specified in this Emergency Order shall be the exclusive remedy or remedy available to address any violation described in this Emergency Order.

2.   Each remedy or penalty specified in this Emergency Order shall be in addition to, and not in substitution for or limitation of, the other remedies or penalties specified in this Emergency Order or in any other applicable law.

3.   Any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any other remedy or penalty specified in this Emergency Order or in any other applicable law.

4.   In particular, but not by way of limitation, each remedy and penalty specified in this section shall be in addition to, and not in substitution for or limitation of, the penalties specified in NYS Executive Law § 24, and any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any penalty specified in NYS Executive Law§ 24.

E.   Notifications.

In addition to such other powers or duties the Sheriff of Herkimer County may consider in the exercise of the Sheriff's duties with respect to this Emergency Order, the Sheriff is authorized and directed by this order to make limited stops to notify persons suspected of transporting migrants or asylum seekers into the County in violation of the restrictions and regulations of this Emergency Order, and to similarly, notify the owners and operators of facilities suspected of housing any migrants or asylum seekers, or seeking or entering agreements with external municipalities, without the license required by this Emergency Order.

## Section 2. Punishment

In accordance with Executive Law Section § 24, any person who knowingly violates the provisions of this order shall be guilty of a Class B Misdemeanor.

## Section 3. Effective Date

This Executive Order shall take effect immediately.

## Section 4. Duration of Local Emergency Order

The Local Emergency Order shall remain in effect for five days unless sooner modified, extended, or revoked, and may be extended for additional periods not to exceed five days during the pendency of the local state of emergency.

GIVEN, under my hand and the Seal of the County of Herkimer this Twelfth Day of May, in the year Two Thousand Twenty-Three



COUNTY OF HERKIMER

_____
Vincent J. Bono
Chairman of the Herkimer County Legislature



## ONEIDA COUNTY
## OFFICE OF THE COUNTY EXECUTIVE

ANTHONY J. PICENTE, JR.
County Executive
ce@ocgov.net

**COUNTY OF ONEIDA**
**LOCAL EMERGENCY ORDER 1 OF 2023**

WHEREAS, by proclamation dated May 11, 2023, the County Executive of the County of Oneida declared a local state of emergency within the County in anticipation of the expiration of an order of the United States Centers for Disease Control and Prevention that prohibited the introduction into congregate settings of noncitizens arriving from or through Mexico and Canada (the "COVID-19 Migration Order"), thereby dramatically increasing the risk, already significant, that migrants will unlawfully enter the United States; and

WHEREAS, there is a national immigration crisis at the border between the United States and Mexico, creating a dramatic increase in the number of persons seeking asylum or who have illegally entered and remained in the United States (hereafter, "Migrants"), and the federal government has failed to anticipate or react to the exigent and emergent circumstances, resulting in thousands of Migrants crossing the United States border; and

WHEREAS, in the last year, the State of Texas has transported tens of thousands of Migrants from Texas to the City of New York, a "sanctuary city," straining the City's homeless, social, health, and emergency services and resulting in reported costs to the City in excess of $4 billion; and

WHEREAS, on May 5, 2023, as a result of the strain placed on the City of New York by Migrants already in the City, the Mayor of the City of New York announced plans to bus Migrants arriving in the City to counties outside of the City of New York, without assessing the capabilities of counties outside of the City of New York to house and feed vulnerable Migrant populations and lacking all authority or jurisdiction to require the same; and

WHEREAS, the County of Oneida strives to be a welcoming community and recognizes the contributions of refugees, immigrants, and lawful migrants to the County's development and emergence as the cultural and economic center of the State; however, unrestricted, unlawful migration poses a grave risk to the social, health, and emergency services resources of the County, particularly during this period of economic growth when the County's inventory of housing and emergency housing is at historic lows; and

WHEREAS, the County of Oneida is responsible for securing the health and safety of its residents, and should the City of New York or other municipalities abruptly transport large numbers of Migrants to the County, the mass arrival of these Migrants will create a social, health, and emergency services crisis, causing an increase in homelessness, threatening the health and public safety of County residents and any relocated Migrants;

NOW THEREFORE, by the power vested in me by New York State Executive Law Section 24 and Oneida County Administrative Code Section 302(k), it here hereby ORDERED:

*Section 1. Prohibition of contracts with municipalities to transport or house Migrants that jeopardize the health, safety, or welfare of the County.*

A.   No person, business or entity doing business within the County of Oneida shall agree or contract with any municipality to transport to or within the County of Oneida any Migrant without the prior written permission of the County Executive or his designee, such permission to be given only after determining that such agreement or contract would not jeopardize the health, safety, or welfare of the County and its residents.

B.   No hotel, motel, shelter, campground, or owner of a multiple dwelling in the County of Oneida shall agree or contract with any municipality to sell, lease, rent, or otherwise provide hotel rooms, housing, campgrounds, motel rooms, or short-term rentals to any Migrant without the prior written permission of the County Executive or his designee, such permission to be given only after determining that such agreement or contract would not jeopardize the health, safety, or welfare of the County and its residents.

C.   As conditions to granting the permissions described in paragraphs A and B of this Section 1, the County Executive or his designee shall require each agreement or contract with a municipal counterparty to:

i.   Provide a date certain for the return or relocation of the Migrant to the jurisdiction of the municipal counterparty;

ii.   Require the municipal counterparty to provide all funding to sustain the needs of the Migrant during his or her stay in the County;

iii.   Assume all costs of the County and any political subdivision within the County arising from the agreement or contract to transport or house the Migrant, including costs for the care, welfare, law enforcement interactions, or other interactions; and

iv.   Provide to the County a bond securing the municipal counterparty's obligations as set forth in this Section 1(C) in an amount not less than Two Thousand Dollars and Zero Cents ($2,000.00) per Migrant.

*Section 2. Penalties and Remedies.*

A.   Pursuant to New York State Executive Law Section 24(5), any person who, or entity which, knowingly violates the provisions of this Local Emergency Order shall be guilty of a class B misdemeanor. The Oneida County Sheriff is authorized to issue appearance tickets for any such knowing violation of this Local Emergency Order.

B.   In addition to the foregoing penalty, any person who, or entity which, knowingly violates any provision of this Local Emergency Order or any term or condition of the permissions authorized hereby shall be liable for a civil penalty of Two

2

Thousand Dollars and Zero Cents ($2,000.00) per day, and per each Migrant transported to or within the County or housed within the County in violation of this Local Emergency Order. The civil penalties provided by this paragraph shall be recoverable in an action instituted in the name of the County and initiated by the County.

C.    Regardless of any other penalty, remedy or relief sought by the County for any violation of this Local Emergency Order, the County Attorney may commence actions or proceedings in the name of the County, in a court of competent jurisdiction, to abate any violations of this Local Emergency Order.

D.    The penalties or remedies of this Local Emergency Order are not exclusive of any other remedy or penalty, but are in addition to all such other remedies and penalties and may be pursued at any time whether prior to, simultaneously with, or following any other remedy or penalty.

*Section 3. Comprehensive Emergency Management Plan.* Pursuant to the Oneida County Comprehensive Emergency Management Plan, the County Executive and the Oneida County Director of Emergency Services shall activate and initiate all processes necessary to effectuate the provisions of this Local Emergency Order.

*Section 4. Severability.* If any clause, sentence, paragraph or part of this Local Emergency Order shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair or invalidate the remainder hereof, but shall be confined in its operation to the clause, sentence, paragraph, section or part of this Local Emergency Order so adjudged to be invalid.

*Section 5. Effective Date and Expiration.* This Local Emergency Order shall take effect immediately and shall remain in effect for a period of five (5) days. This Local Emergency Order may be renewed for additional periods of five (5) days each.

This Local Emergency Order shall be executed in quadruplicate and filed within seventy-two hours or as soon thereafter as practicable in the office of the Clerk of Board of Legislators, the office of the County Clerk, the New York Secretary of State, and the New York State Office of Emergency Management withing the Division of Homeland Security and Emergency Services.

_____
ANTHONY J. PICENTE, JR.
COUNTY EXECUTIVE

Date: ___5 - 11 - 23_____

3



**LYNNE M. JOHNSON**
Chairman
**WILLIAM H. EICK**
Vice Chairman
**JOHN C. WELCH, JR.**
Chief Administrative Officer
**LISA STENSHORN**
Clerk of the Legislature
**KATHERINE BOGAN**
County Attorney

**LEGISLATORS**

Donald J. Allport    - At Large
Edward F. Morgan  - At Large
Merle L. Draper     - At Large
William H. Eick      - District 1
Lynne M. Johnson - District 2
Fred Miller             - District 3
John M. Fitzak       - District 4

**ORLEANS COUNTY LEGISLATURE**
14016 Route 31 W, Suite 201, Albion, New York 14411
Phone: (585) 589-7053   Fax: (585) 589-1618
www.orleanscountyny.com

## EMERGENCY ORDER

### Local Emergency Order for Orleans County dated May 17, 2023

I, Lynne M. Johnson, Chairman of the Orleans County Legislature, in accordance with a declaration of a State of Emergency issued May 17, 2023, and pursuant to Section 24 of New York State Executive Law, do hereby order:

**Section 1.  Prohibition of foreign municipal programs that burden the County.**

A. No municipality or entity may make contracts with persons, businesses, or entities doing business within the County to transport migrants or asylum seekers to locations in the County, or to house persons at locations in the County for any length of time without the express written permission of the Chairman of the Orleans County Legislature. In addition, no person or entity may act on behalf of any municipality or in performance of a municipal program, or other act funded by a municipality, to perform an act in violation of this subsection.

B. No hotel, motel, or owner of a multiple dwelling in Orleans County is permitted to contract or otherwise engage in business with any other municipality other than the County of Orleans (an "external municipality") for the purpose of providing housing or accommodations for migrants or asylum seekers without written approval granted by the County.

C. Remedies.

1. Appearance tickets.  The Sheriff is authorized to issue appearance tickets for any violation of this Emergency Order for the penalty prescribed by NYS Executive Law§ 24(5).

2. Civil penalties. In addition to those penalties prescribed by NYS Executive Law§ 24(5), any person who violates any provision of this Emergency Order or any term or condition of any license issued pursuant to this Emergency Order, shall be liable to a civil penalty, of not more than $2,000 per migrant/asylum seeker housed by the foreign municipality or other violator, for each day or part thereof during which such violation continues. The civil penalties provided by this subdivision shall be recoverable in an action instituted in the name of this County and initiated by the County Attorney.

3. Abatement.  Regardless of any other remedy or relief brought by the  County for any violation, the County Attorney to commence actions or proceedings in the name of the County, in a court of competent jurisdiction, to abate any violation of, or to enforce any provision of this Emergency Order.

D. Remedies not exclusive.

1. No remedy or penalty specified in this Emergency Order shall be the exclusive remedy or remedy available to address any violation described in this Emergency Order.

2. Each remedy or penalty specified in this Emergency Order shall be in addition to, and not in substitution for or limitation of, the other remedies or penalties specified in this Emergency Order or in any other applicable law.

3. Any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any other remedy or penalty specified in this Emergency Order or in any other applicable law.

4. In particular, but not by way of limitation, each remedy and penalty specified in this section shall be in addition to, and not in substitution for or limitation of, the penalties specified in NYS Executive Law § 24, and any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any penalty specified in NYS Executive Law§ 24.

E. Notifications.

In addition to such other powers or duties the Sheriff of Orleans County may consider in the exercise of the Sheriff's duties with respect to this Emergency Order, the Sheriff is authorized and directed by this order to make limited stops to notify persons suspected of transporting migrants or asylum seekers into the County in violation of the restrictions and regulations of this Emergency Order, and to similarly, notify the owners and operators of facilities suspected of housing any migrants or asylum seekers, or seeking or entering agreements with external municipalities, without the written approval required by this Emergency Order.

**Section 2.  Punishment**

In accordance with Executive Law Section§ 24, any person who knowingly violates the provisions of this order shall be guilty of a Class B Misdemeanor.

**Section 3.  Effective Date**

This Emergency Order shall take effect immediately.

**Section 4.  Duration of Local Emergency Order**

The Local Emergency Order shall remain in effect for five days unless sooner modified, extended, or revoked, and may be extended for additional periods not to exceed five days during the pendency of the local state of emergency.

GIVEN, under my hand and the Seal of the County of Orleans this Seventeenth Day of May, in the year Two Thousand Twenty-Three

COUNTY OF ORLEANS

Lynne M. Johnson
Chairman of the Orleans County Legislature



**Rensselaer County**
**Office of County Executive Steven F. McLaughlin**
99 Troy Road East Greenbush, NY 12061
(518) 270-2900

## LOCAL STATE OF EMERGENCY PROCLAMATION

**WHEREAS**, illegal aliens are crossing over the borders of the United States in increasing numbers; and

**WHEREAS**, over the past several months, tens thousands of illegal aliens have arrived in New York City; and

**WHEREAS**, the Mayor of the City of New York has declared the increase in illegal aliens in the City of New York to be a humanitarian crisis; and

**WHEREAS,** the U.S. Department of Health and Human Services is planning for the federal Public Health Emergency for COVID-19 to expire on May 11, 2023;

**WHEREAS,** upon the expiration of the federal Health Emergency for COVID-19, the Centers for Disease Control and Prevention order under Title 42, which suspended the allowance of certain persons travelling from Canada or Mexico, will also expire on May 11, 2023; and

**WHEREAS,** with the imminent lifting of the Title 42 order, the Mayor of the City of New York expects an even larger influx of illegal aliens and has put in place plans to send illegal aliens from the City of New York to other areas throughout the State of New York; and

**WHEREAS,** the County of Rensselaer does not have the capacity or resources to receive and sustain an extraordinary increase in the number of illegal aliens; and

**WHEREAS,** based on the foregoing and other relevant considerations, the immediate danger of an extraordinary increase in the number illegal aliens

entering the County of Rensselaer imperils the public safety within the County of Rensselaer; and

**NOW THEREFORE,** pursuant to New York State Executive Law Section 24 and Article 3 of the Rensselaer County Charter, I, Steven F. McLaughlin, County Executive for the County of Rensselaer, hereby proclaim a state of emergency within the territorial limits of the County of Rensselaer, effective immediately, and continuing until the earlier of the date that is thirty days from the date of this Proclamation or the date on which I rescind this Proclamation.

May 9, 2023

Steven F. McLaughlin
County Executive



**Rensselaer County**
**Office of County Executive Steven F. McLaughlin**
99 Troy Road East Greenbush, NY 12061
(518) 270-2900

## LOCAL STATE OF EMERGENCY ORDER

On May 9, 2023, the Rensselaer County Executive proclaimed a local statement of emergency for the County of Rensselaer because public safety within the County of Rensselaer is imperiled due to the immediate danger of an extraordinary increase in the number of illegal aliens entering the County of Rensselaer.

Pursuant to NYS Executive Law§ 24, when a State of Emergency is in effect, the County Executive may promulgate local emergency orders to protect life and property or to bring the emergency situation under control. By law upon reconsideration of all the relevant facts and circumstances, such an order may be extended for additional periods not to exceed five days each during the pendency of the state of emergency.

Accordingly, by the power vested in me as County Executive of Rensselaer County, it is hereby ordered:

Section 1. Prohibition of foreign municipal programs that burden the County.

A.    No municipality may make contracts with persons, businesses, or entities doing business within the County to transport migrants or asylum seekers to locations in the County, or to house persons at locations in the County for any length of time without the express written permission of the County Executive. In addition, no person or entity may act on behalf of any municipality or in performance of a municipal program, or other act funded by a municipality, to perform an act in violation of this subsection.

B.    No hotel, motel, or owner of a multiple dwelling in Rensselaer County is permitted to contract or otherwise engage in business with any other municipality other than the County of Rensselaer (an "external municipality") for the purpose of providing housing or accommodations for migrants or asylum seekers without a license granted by the County. This prohibition extends to any

person or entity participating in an external municipality's government program, or a contract or service funded by an external municipality, or acting on behalf of any external municipality.

1.  Licenses will be granted only by the Public Health Director of the Rensselaer County Department of health. The Director may enlist the services of any other agency within County government to perform the duties necessary to effect this provision.

2.  Licenses will only be granted where, to the satisfaction of the Director, both the applicant and the foreign municipality demonstrate that:

    a.  The contract provides that the migrants or asylum seekers will be returned to the foreign municipality from which they arrived or another location outside the County, within fifteen days; and

    b.  The foreign municipality demonstrates to the County that it has sufficient funding to sustain the needs of the migrants or asylum seekers during the time of their stay; and

    c.  The foreign municipality agrees to assume any costs expended by any municipality in the County ("domestic municipalities") including the County itself, for the care, welfare, law enforcement interactions, or other expenses related to municipal interaction with the migrants or asylum seekers upon demand; and

    d.  The applicant and the foreign municipality each have a performance bond for the conditions set by the license in the amount of $2,000 per migrant or asylum seeker being housed or boarded at the

applicant's facility.

3.     The conditions described in this section will not apply to any contract directly between the foreign municipality and the County.

4.     License renewal will be at the sole discretion of the Director, after consideration of the purpose and intent of the State of Emergency that instigated this Emergency Order.

C.     Remedies.

1.     Appearance tickets. The Sheriff, the Director and the Director's designees are authorized to issue appearance tickets for any violation of this Emergency Order for the penalty prescribed by NYS Executive Law § 24(5).

2.     Civil penalties. In addition to those penalties prescribed by NYS Executive Law § 24(5), any person who violates any provision of this Emergency Order or any term or condition of any license issued pursuant to this Emergency Order, shall be liable to a civil penalty, to be determined by a process set by the Director, of not more than $2,000 per migrant/asylum seeker housed by the foreign municipality or other violator, for each day or part thereof during which such violation continues. The civil penalties provided by this subdivision shall be recoverable in an action instituted in the name of this County and initiated by the Director.

3.     Abatement. Regardless of any other remedy or relief brought by the County for any violation, the Director is authorized to request the County Attorney to commence actions or proceedings in the name of the County, in a court of competent jurisdiction, to abate any violation of, or to enforce any provision of this Emergency Order.

D.    Remedies not exclusive.

1.    No remedy or penalty specified in this Emergency Order shall be the exclusive remedy or remedy available to address any violation described in this Emergency Order.

2.    Each remedy or penalty specified in this Emergency Order shall be in addition to, and not in substitution for or limitation of, the other remedies or penalties specified in this Emergency Order or in any other applicable law.

3.    Any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any other remedy or penalty specified in this Emergency Order or in any other applicable law.

4.    In particular, but not by way of limitation, each remedy and penalty specified in this section shall be in addition to, and not in substitution for or limitation of, the penalties specified in NYS Executive Law § 24, and any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any penalty specified in NYS Executive Law§ 24.

E.    Notifications. In addition to such other powers or duties the Sheriff of Rensselaer County may consider in the exercise of the Sheriff's duties with respect to this Emergency Order, the Sheriff is authorized and directed by this order to make limited stops to notify persons suspected of transporting migrants or asylum seekers into the County in violation of the restrictions and regulations of this Emergency Order, and to similarly, notify the owners and operators of facilities suspected of housing any migrants or asylum seekers, or seeking or entering agreements with external municipalities, without the license required by this Emergency Order.

*Section 3. Effective Date.*

This Local Emergency Order shall take effect immediately.

*Section 4. Duration of Local Emergency Order*

The Local Emergency Order shall remain in effect for five days unless sooner modified, extend ed, or revoked, and may be extend ed for additional periods not to exceed five days during the pendency of the local state of emergency.

*Section 5. County Subdivisions*

To the extent allowed by applicable governing law, all departments and subdivisions of the County of Rensselaer are hereby directed to develop and implement policies and procedures consistent with this Order.

*Section 6. Common Name*

This Order may be referred to as the "Rensselaer County Sustainable Migration Protocol."

Dated: May 9, 2023

Steven F. McLaughlin
County Executive
County of Rensselaer

# LOCAL STATE OF EMERGENCY DECLARATION

A Local State of Emergency is hereby declared in the County of Saratoga effective at ___4:45pm___ on ___May 19, 2023___.

**WHEREAS**, this Local State of Emergency has been declared due to the national immigration crisis at the border between the United States and Mexico whereby an overwhelming number of illegal immigrants, migrants and asylum seekers are crossing over the open border of the United States; and

**WHEREAS**, over the past several months, tens of thousands of illegal immigrants, migrants and asylum seekers have arrived in New York City; and

**WHEREAS**, the U.S. Department of Health and Human Services federal Public Health Emergency for COVID-19 expired on May 11, 2023;

**WHEREAS**, upon the expiration of the federal Health Emergency for COVID-19, the Centers for Disease Control and Prevention order under Title 42, which suspended the allowance of certain persons travelling from Canada or Mexico, also expired on May 11, 2023; and

**WHEREAS**, the Mayor of the City of New York has declared the increase in illegal immigrants, migrants and asylum seekers in the City of New York to be a humanitarian crisis; and

**WHEREAS**, with the lifting of the Title 42 order, the Mayor of the City of New York expects an even larger influx of illegal immigrants, migrants and asylum seekers and has put in place plans to send illegal immigrants from the City of New York to other counties throughout the State of New York; and

**WHEREAS**, there is no indication that the migrants and asylum seekers being transported to counties outside of New York City for immediate shelter and services will be for a short-term period of time; and

**WHEREAS**, as of 2022 the US Census Bureau estimates the population of Saratoga County to be 238,797, and the County is rated to be one of the fastest growing counties in New York State and, therefore, would be especially sensitive to further change in population; and

**WHEREAS,** the County of Saratoga does not have the capacity or resources to receive and sustain a significant increase in the number of illegal immigrants, migrants and/or asylum seekers; and

**WHEREAS,** the County of Saratoga does not have adequate infrastructure to meet the needs of the overflow of illegal immigrants, migrants and asylum seekers overwhelming the New York City systems; and

**WHEREAS,** all temporary housing shelter beds in Saratoga County are currently at maximum capacity and cannot accommodate additional homeless individuals; and

**WHEREAS,** there is no legal basis to provide adequate services to these illegal immigrants, migrants and/or asylum seekers by the County's Department of Social Services because of their age and immigration status; and

**WHEREAS,** the County of Saratoga anticipates potential civil disobedience and protesting on this issue both for and against the transportation of illegal immigrants, migrants and/or asylum seekers to Saratoga County; and

**WHEREAS,** due to the above circumstances and threat to public safety, I find reasonable apprehension of the immediate danger thereof that public safety and public health is imperiled thereby, for not only the illegal immigrants, migrants and/or asylum seekers, but also to the other affected residents of Saratoga County; and

**NOW THEREFORE,** as the Chief Executive of the County of Saratoga, I, Theodore T. Kusnierz, Jr. exercise the authority given me under Section 24 of the New York State Executive Law, to preserve the public safety and hereby render all required and available assistance vital to the security, well-being, and health of the citizens of this Municipality, and hereby proclaim and declare a local state of emergency within the County of Saratoga, effective May 19, 2023 and continuing until June 18, 2023, unless I rescind or extend such local state of emergency.

I hereby direct all departments, agencies, and municipalities of Saratoga County to take whatever steps necessary to protect life and property, public infrastructure, and provide such emergency assistance deemed necessary.

This declaration shall be executed in quadruplicate and filed within seventy-two hours or as soon thereafter as practicable in the office of the Clerk of the Board, the office of the County Clerk, the New York State Secretary of State, and the New York State Office of Emergency Management within the Division of Homeland Security and Emergency Services.

**Theodore T. Kusnierz Jr.**

**(Name)**

**(Signature)**

**Chairman of the Board of Supervisor**

**(Title)**

5 - 19 - 23

**(Date)**

🏠HOMEPAGE LINK (/home)

Contact Us (/contact)    Webmail (https://webmail.sullivanny.us/owa)    **f**FACEBOOK LINK (https://www.facebook.com/sullivancountygov/)⊚INSTAGRAM LINK (https://www.Instagram.com/sullivancountygov)▶YOUTUBE LINK (https://www.youtube.com/channel/UC-6KnDAiuQEnDNWO13Ev1sw)🐦TWITTER LINK (https://twitter.com/sullivancntygov)in LINKED IN LINK (https://www.linkedin.com/company/sullivancountynygovernment)▣COUNTY NEWS (/news/2023) ■◖COUNTY VIDEO (https://www.elocallink.tv/m/v/Redesign4/?pid=w4w3y6A3z21&fp=nysulli22_wel_rev1_iwd)



(/)

How can we help?    🔍

# STATE OF EMERGENCY DECLARATION

Thursday, May 18, 2023

A State of Emergency is hereby declared in the County of Sullivan effective at 1:00PM on May 18, 2023.

This State of Emergency has been declared due to the fact that the County of Sullivan is currently experiencing a severe housing crisis. The County of Sullivan's housing stock significantly limits its ability to provide temporary, permanent and emergency housing for the citizens of Sullivan County and the clients of Sullivan County's local social services district. The County of Sullivan is not capable of receiving clients from other local services districts, including New York City, and providing housing to those individuals.

The imminent arrival of New York City's local social services district's clients to the County of Sullivan for the purpose of seeking housing has created this State of Emergency and this situation threatens the public health and the public safety.

This State of Emergency will remain in effect for thirty (30) days or until rescinded by a subsequent order.

As the Chief Executive of the County of Sullivan, I, Joshua A. Potosek, exercise the authority given me under Section 24 of the New York State Executive Law, to preserve the public health and safety and hereby render all required and available assistance vital to the security, well-being, and health of the citizens of this Municipality.

I hereby direct all departments and agencies of the County of Sullivan to take whatever steps necessary to protect life, health, and property, public infrastructure, and provide such emergency assistance deemed necessary.

Date: May 18, 2023

_____

Joshua A. Potosek, M.B.A.

Manager, County of Sullivan

Local State of Emergency Order

On May 18, 2023, the Sullivan County Manager proclaimed a State of Emergency for the County of Sullivan because its public safety is at risk due to the imminent danger of the number of social services clients from of another county entering Sullivan County.

This State of Emergency will remain in effect for five (5) days or until rescinded by a subsequent order. The County Manager exercises the authority given under Section 24 of the New York State Executive Law, to preserve the public health and safety and hereby render all required and available assistance vital to the security, well-being, and health of the citizens of this municipality. The County Manager hereby directs all departments to take steps necessary to protect life, health, and property, public infrastructure, and provide such emergency assistance deemed necessary.

Accordingly, it is hereby ordered:

Section 1. Prohibition that burdens the County of Sullivan:

A. No municipality may make contracts with persons, businesses, or entities within the County of Sullivan to house social services clients from another county for any length of time without the express consent of the County Manager.

B. No hotel, motel, or owner of a multiple dwelling in the County of Sullivan is permitted to contract with another municipality other than the County of Sullivan for the purpose of providing housing to social services clients from another county without a license from the County of Sullivan.

Section 2. Penalties:

A. The Sullivan County Sheriff is authorized to issue appearance tickets for any violation of this Order for the penalty prescribe by New York State Executive Law § 24(5).

Section 3. Notification:

A. Notification to persons, businesses, and entities affected by this Order shall be provided by publication the official newspaper of the County of Sullivan Legislature as well as publication by the Sullivan County Communications Director.

Date: May 18, 2023

_____

Joshua A. Potosek, M.B.A.

Manager, County of Sullivan

Quick Links

Aging (/departments/aging)

Airport (/departments/airport)

Audit and Control (/Departments/Auditcontrol)

Care Center at Sunset Lake (/departments/adultcarecenter)

Center for Workforce Development (/Departments/Workforcedevelopment)

Charter Review Commission (/Departments/CharterReviewCommission)

Community Services (/Departments/Communityservices)

Coroners (/Departments/Coroners)

County Attorney (/Departments/Attorney)

County Historian (/Departments/CountyHistorian)

County Clerk (/departments/clerk)

County Legislature (/departments/legislature)

County Manager (/Departments/Countymanager)

County Treasurer (/Departments/Treasurer)

District Attorney (/Departments/Districtattorney)

Elections (/Departments/Elections)

Electrical Licensing Board (/Departments/ElectricalLicensingBoard)

Emerald Corporate Center Economic Development Corp (/Departments/Emeraldcorporatecenter)

Emergency Control Center, 911 (/Departments/Emergencycommunications)

Emergency Management/Homeland Security (/Departments/Emergencymanagementhomelandsecurity)

EMS (/Departments/EMS)

Family Services (/Departments/FamilyServices)

Fire (/Departments/Fire)

Grants Administration (/Departments/Grants)

Health and Family Services (/Departments/HealthandFamilyServices)

Human Rights Commission (/Departments/Humanrights)

Information Technology Services (/Departments/Informationtechnology)

Management & Budget (/Departments/Managementandbudget)

Motor Vehicle Bureau (/Departments/Clerk/DMV)

Parks and Recreation (/Departments/ParksRecreation)

Personnel (/departments/personnel)

Planning and Environmental Management (/Departments/PlanningEnvironmental)

Probation (/Departments/Probation)

Public Health Services (/Departments/Publichealth)

Public Works (/Departments/PublicWorks)

Purchasing (/Departments/Purchasing)

Real Property Tax Services (/Departments/RealProperty)

Risk Management and Insurance (/Departments/RiskManagement)

Sheriff (/Departments/Sheriff)

Solid Waste & Recycling (/Departments/SolidWasteRecycling)

Stop DWI (/Departments/STOPDWI)

Sullivan Tobacco Asset Securitization Corporation (/Departments/TobaccoAssetSecuritization)

Sustainable Energy (/Departments/SustainableEnergy)

Transportation (/Departments/Transportation)

Veterans Service Agency (/Departments/Veterans)

Wellness Committee (/Departments/Wellnesscommittee)

Youth Bureau (/Departments/Youthbureau)

# SULLIVAN COUNTY NEWS (/NEWS/2023)

Current News (/news/2023)

2022 News Archives (/news/2022)

2021 News Archives (/news/2021)

2020 News Archives (/news/2020)

2019 News Archives (/news/2019)

2018 News Archives (/news/2018)

2017 News Archives (/news/2017)

# HELPFUL LINKS

**NEW! List of Redeemable Foreclosed Properties**

(/sites/default/files/departments/treasurer/2021%20List%20of%20Foreclosure%20Properties.pdf)

**Make Your DMV Appointment (https://sullivancountydmvscheduling.as.me/schedule.php?)**

2023 Plan for Road and Bridgework

(/sites/default/files/departments/DPW/2023%20DPW%20Program%20Final.pdf)

Sullivan County 2023 Adopted Budget (/Departments/Managementandbudget/Budgetdocuments)

**Calendar of County Government Events (/calendar)**

Info on Hughes Energy Autoclave Proposal (/Departments/Legislature/HughesEnergy)

How We're Using ARPA Funds (/Departments/Countymanager/ARPA)

Watch Legislature Meetings (https://sullivancountyny.legistar.com/Calendar.aspx)

**March/April 2023 County Manager's Newsletter**

(/sites/default/files/departments/CMGR/Newsletter/2023/County%20Manager%20MarchApril%202023%2

Freedom of Information Law (FOIL) (https://sullivanny.us/Departments/Countymanager/Foil)

Sullivan County 2022 Annual Report

(/sites/default/files/departments/CMGR/AnnualReports/2022/2022%20SC%20Annual%20Report.pdf)

Food Pantry Guide

 English (/sites/default/files/departments/HFS/Resources/ENGLISH%20-
%20FOOD%20PANTRY%20GUIDE%20PRINT%202%20SIDED%20FLIP%20ON%20SHORT%20EDGE.pdf)

 Espanol (/sites/default/files/departments/HFS/Resources/SPANISH%20-
%20FOOD%20PANTRY%20GUIDE%20-%20PRINT%202%20SIDED%20-

%20FLIP%20ON%20SHORT%20SIDE.pdf)



© 2023 Copyright Sulllivan County. All rights reserved.

**Contact Sullivan County:**

100 North Street
Monticello, NY 12701
Phone: (845) 794-3000
Contact Us (/contact)

**Navigation**

Government (/government)
Departments (/departments)
Business (/Business)
Visitors (/visitors)
Jobs (https://sullivan-portal.mycivilservice.com/jobopps)

County Connections

f FACEBOOK LINK (https://www.facebook.com/sullivancountygov/) INSTAGRAM LINK (https://www.Instagram.com/sullivancountygov) YOUTUBE LINK (https://www.youtube.com/channel/UC-6KnDAiuQEnDNWO13Ev1sw) TWITTER LINK (https://twitter.com/sullivancntygov) LINKEDIN LINK (https://www.linkedin.com/company/sullivancountynygovernment) COUNTY NEWS (/news/2022) COUNTY EMAIL (/contact) COUNTY VIDEO (https://www.elocallink.tv/m/v/Redesign4/?pid=w4w3y6A3z21&fp=nysulli22_wel_rev1_iwd)



Select Language



Board of Legislators
County Office Building, Room 201
7 Court Street
Belmont, New York 14813
Phone: 585-268-9222

## STATE OF EMERGENCY DECLARATION

A State of Emergency is hereby declared in the County of Allegany, effective <u>1:00 p.m.</u> on <u>May 19, 2023</u>.

This local State of Emergency has been declared due to New York City's actions to rapidly divert the number of migrants to other Counties in New York State to unsustainable levels. The County of Allegany does not have the capacity to receive or sustain any number of migrants and/or asylum seekers.

As the Chief Executive of the County of Allegany, I, W. Brooke Harris, Chairman of the Board, exercise the authority given me under New York State Executive Law Section 24, to preserve the public health and public safety, and hereby render all required and available assistance vital to the security, well-being, and health and safety of the citizens of the County of Allegany.

Local emergency orders may be enacted subsequent to this declaration. This State of Emergency will remain in effect for thirty days or until rescinded or renewed by a subsequent order.

This Declaration shall be executed in quadruplicate and filed within seventy-two hours or as soon thereafter as practicable in the Office of the Clerk of the Allegany County Board of Legislators, the Office of the Allegany County Clerk, the New York Secretary of State, and the New York State Office of Emergency Management within the Division of Homeland Security and Emergency Services.

Dated: May 19, 2023

W. Brooke Harris
Chairman of the Allegany County Board of Legislators

Witnessed by:

Carissa M. Knapp,
Allegany County Administrator



**CHAUTAUQUA COUNTY**
**OFFICE OF THE COUNTY EXECUTIVE**

Gerace Office Building • 3 N. Erie St. • Mayville, NY 14757-1007
(716) 753-4211 • FAX (716) 753-4756 • wendelp@chqgov.com
https://chqgov.com/

**PAUL M. WENDEL, JR.**
County Executive

## LOCAL STATE OF EMERGENCY
## EMERGENCY ORDER NO. 1
## (Sustainable Migration)

On May 18, 2023, a State of Emergency was declared for the County of Chautauqua arising from New York City's program to rapidly increase the number of migrants in this County to unsustainable levels.

Pursuant to NYS Executive Law § 24, when a State of Emergency is in effect, the County Executive may promulgate local emergency orders to protect life and property or to bring the emergency situation under control. By law, upon reconsideration of all the relevant facts and circumstances, such an order may be extended for additional periods not to exceed five days each during the pendency of the state of emergency.

If it were allowed for the City of New York or other municipalities to simply flood the County with persons in need of services, as described in the related Declaration, this crisis would only worsen.

**THEREFORE**, by the power vested in me as County Executive of Chautauqua County, it is hereby ordered:

**Section 1. Prohibition of foreign municipal programs that burden the County.**

A.   No municipality may make contracts with persons, businesses, or entities doing business within the County to transport migrants or asylum seekers to locations in the County, or to house persons at locations in the County for any length of time without the express written permission of the County Executive. In addition, no person or entity may act on behalf of any municipality or in performance of a municipal program, or other act funded by a municipality, to perform an act in violation of this subsection.

B.   No hotel, motel, or owner of a multiple dwelling in Chautauqua County is permitted to contract or otherwise engage in business with any other municipality other than the County of Chautauqua (an "external municipality") for the purpose of providing housing or accommodations for migrants or asylum seekers without a license granted by the County. This prohibition extends to any person or entity participating in an external municipality's government program, or a contract or service funded by an external municipality, or acting on behalf of any external municipality. This provision is applicable to

migrants or asylum seekers arriving on or after the declaration of the State of Emergency by Chautauqua County, and does not affect those individuals already located within Chautauqua County prior to the declaration of the State of Emergency.

1. Licenses will be granted only by the Chautauqua County Executive's Office. The County Executive may enlist the services of any other agency within the executive branch of the County government to perform the duties necessary to effect this provision.

2. Licenses will only be granted where, to the satisfaction of the County Executive, both the applicant and the foreign municipality demonstrate that:
   a. The contract provides that the migrants or asylum seekers will be returned to the foreign municipality from which they arrived or another location outside the County, within fifteen days;
   b. The foreign municipality demonstrates to the County that it has sufficient funding to sustain the needs of the migrants or asylum seekers during the time of their stay; and
   c. The foreign municipality agrees to assume any costs expended by any municipality in the County ("domestic municipalities") including the County itself, for the care, welfare, law enforcement interactions, or other expenses related to municipal interaction with the migrants or asylum seekers upon demand,
   d. The applicant and the foreign municipality each have a performance bond for the conditions set by the license in the amount of $2,000 per migrant or asylum seeker being housed or boarded at the applicant's facility.

3. The conditions described in this section will not apply to any contract directly between the foreign municipality and the County.

4. License renewal will be at the sole discretion of the County Executive, after consideration of the purpose and intent of the State of Emergency that instigated this Emergency Order.

C. Remedies.

1. Appearance tickets. The Sheriff, the County Executive and the County Executive's designees are authorized to issue appearance tickets for any violation of this Emergency Order for the penalty prescribed by NYS Executive Law §24(5).

2. Civil penalties. In addition to those penalties prescribed by NYS Executive Law § 24(5), any person who violates any provision of this Emergency Order or any term or condition of any license issued pursuant to this Emergency Order, shall be liable to a civil penalty, to be determined by a process set by the County Executive, of not more than $2,000 per migrant/asylum seeker housed by the foreign municipality or other violator, for each day or part thereof during which such violation continues. The civil penalties provided by this subdivision shall be recoverable in an action instituted in the name of this County and initiated by the County Executive.

3.      Abatement. Regardless of any other remedy or relief brought by the County for any violation, the County Executive is authorized to direct the County Attorney to commence actions or proceedings in the name of the County, in a court of competent jurisdiction, to abate any violation of, or to enforce any provision of this Emergency Order.

D. Remedies not exclusive.

1.      No remedy or penalty specified in this Emergency Order shall be the exclusive remedy or penalty available to address any violation described in this Emergency Order.

2.      Each remedy or penalty specified in this Emergency Order shall be in addition to, and not in substitution for or limitation of, the other remedies or penalties specified in this Emergency Order or in any other applicable law.

3.      Any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any other remedy or penalty specified in this Emergency Order or in any other applicable law.

4.      In particular, but not by way of limitation, each remedy and penalty specified in this section shall be in addition to, and not in substitution for or limitation of, the penalties specified in NYS Executive Law§ 24, and any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any penalty specified in NYS Executive Law§ 24.

E. Notifications. In addition to such other powers or duties the Sheriff of Chautauqua County may consider in the exercise of the Sheriff's duties with respect to this Emergency Order, the Sheriff is authorized and directed by this order to make limited stops to notify persons suspected of transporting migrants or asylum seekers into the County in violation of the restrictions and regulations of this Emergency Order, and to similarly, notify the owners and operators of facilities suspected of housing any migrants or asylum seekers, or seeking or entering agreements with external municipalities, without the license required by this Emergency Order.

**Section 2. Effective Date**.

This Local Emergency Order shall take effect immediately.

**Section 3. Duration of Local Emergency Order**

The Local Emergency Order shall remain in effect for five days unless sooner modified, extended, or revoked, and may be extended for additional periods not to exceed five days during the pendency of the local state of emergency.

**Section 4. Common Name**

This Order may be referred to as the "Chautauqua County Sustainable Migration Protocol."

Dated: May 18, 2023

Paul M. Wendel, Jr.
County Executive
County of Chautauqua



# County of Fulton

COUNTY BUILDING
JOHNSTOWN, NEW YORK 12095

*Board of Supervisors*

**INFORMATION RELEASE**
**19 MAY 2023**

*Telephone (518) 736-5540*
*Fax (518) 762-0224*

## FULTON COUNTY DECLARES STATE OF EMERGENCY RELATED TO MIGRANT CRISIS

Chairman of the Fulton County Board of Supervisors, Scott Horton, has issued a State of Emergency Declaration, effective May 19, 2023, to protect the public safety and public health during the migrant relocation crisis in New York State. The failure of the U.S. government and New York State government to address illegal migration, primarily along the U.S.-Mexico border, has exposed communities across the country to serious harm and this Emergency Declaration and associated Emergency Orders are being issued to protect citizens and visitors in Fulton County. The City of New York has declared itself a "sanctuary city" without the resources or know-how to handle illegal migration. Fulton County and most other communities have not declared themselves "sanctuary" and do not have the resources to humanely house or provide social support services to illegal migrants or asylum seekers.

The Fulton County region has strived to be a welcoming community and County government recognizes and appreciates the contributions of lawful migrants for centuries; however, unlawful migration poses a grave risk to the social, health, and public safety welfare of residents, businesses and visitors. The State of Emergency and associated Emergency Order No. 1 of 2023 restrict public and/or private entities from transporting migrants or asylum seekers to locations within the county, or to house such persons within the county without express written permit issued by the Chairman of the Board of Supervisors. This restriction includes hotels, motels, campgrounds, rental businesses or owners of any other dwelling.

The Emergency Order No. 1 will remain in effect for five (5) days unless modified, extended or revoked. The Order may be extended for additional periods not to exceed five (5) days during the State of Emergency in accordance with NYS Executive Law, Section 24.

Contact: Jon R. Stead
Administrative Officer/Clerk of the Board
518-736-5540



**County of Fulton**

COUNTY BUILDING
JOHNSTOWN, NEW YORK 12095

*Board of Supervisors*

*Telephone (518) 736-5540*
*Fax (518) 762-0224*

# EMERGENCY ORDER NO. 1 OF 2023

**Intent.**

WHEREAS, on May 19, 2023, the Chairman of the Board of Supervisors of the County of Fulton declared a local State of Emergency within the County to address the expiration of an order of the United States Centers for Disease Control and Prevention that prohibited the introduction into congregate settings of noncitizens arriving from or through Mexico and Canada (the "COVID-19 Migration Order"), thereby dramatically increasing unlawful entry into the United States; and

WHEREAS, there is a national immigration crisis at the border between the United States and Mexico, creating a dramatic increase in the number of persons seeking asylum or who have illegally entered and remained in the United States (hereafter, "Migrants"), and the federal government has failed to anticipate or react to the exigent and emergent circumstances, resulting in thousands of Migrants crossing the United States border; and

WHEREAS, the City of New York has previously declared itself to be a "sanctuary city"; however, most other governments, including the County of Fulton, have not declared such; and

WHEREAS, on May 5, 2023, as a result of the strain placed on the City of New York by Migrants already in the City, the Mayor of the City of New York announced plans to bus migrants to counties outside the City, without assessing the capabilities of counties outside of the City of New York to house and feed vulnerable Migrant populations and lacking all authority or jurisdiction to require the same; and

WHEREAS, unrestricted, unlawful migration poses a grave risk to the social, health and emergency services resources of Fulton County, particularly during this period of economic growth when the County's inventory of housing and emergency housing is at historic lows; and

WHEREAS, the County of Fulton is responsible for securing health and safety of its residents, and should the City of New York or other municipalities abruptly transport large numbers of Migrants to the County, the mass arrival of these Migrants will create a social, health and emergency services crisis, causing an increase in homelessness, threatening the health and public safety of County residents and any relocated Migrants;

NOW THEREFORE, by the power vested in me by New York Executive Law Section 24, it hereby ordered:

**Section 1. <u>Prohibition of foreign municipal programs that burden the County.</u>**

    A. No municipality may make contracts with persons, businesses, or entities doing business within the County to transport migrants or asylum seekers to locations in the County, or to house persons at locations in the County for any length of time without the express written permission of the Chairman of the Fulton County Board of Supervisors. In addition, no person or entity may act on behalf of any municipality or in performance of a municipal program, or other act funded by a municipality, to perform an act in violation of this subsection.

    B. No hotel, motel, campground, rental business or owner of any dwelling in Fulton County is permitted to contract or otherwise engage in business with any other municipality other than the County of Fulton for the purpose of providing housing or accommodations for migrants or asylum seekers without a license granted by the County.

    C. Remedies.

        1. Appearance tickets. The Sheriff is authorized to issue appearance tickets for any violation of this Emergency Order for the penalty prescribed by NYS Executive Law § 24(5).

        2. Civil penalties. In addition to those penalties prescribed by NYS Executive Law § 24(5), any person who violates any provision of this Emergency Order, or any term or condition of any license issued pursuant to this Emergency Order, shall be liable to a civil penalty, of not more than $2,000.00 per migrant/asylum seeker housed by the foreign municipality or other violator, for each day or part thereof during which such violation continues. The civil penalties provided by this subdivision shall be recoverable in an action instituted in the same of this County and initiated by the County Attorney.

        3. Abatement. Regardless of any other remedy, or relief brought by the County for any violation, the County Attorney to commence actions or proceedings in the name of the County, in a court of competent jurisdiction, to abate any violation of, or to enforce any provision of this Emergency Order.

    D. Remedies not exclusive.

        1. No remedy or penalty specified in this Emergency Order shall be exclusive remedy or remedy available to address any violation described in this Emergency Order.

        2. Each remedy or penalty specified in this Emergency Order shall be in addition to, and not in substitution for or limitation of, the other remedies or penalties specified in this Emergency Order or in any other applicable law.

3. Any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any other remedy or penalty specified in this Emergency Order or in any other applicable law.

4. In particular, but not by way of limitation, each remedy and penalty specified in this section shall be in addition to, and not in substitution for or limitation of, the penalties specified in NYS Executive Law § 24, and any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any penalty specified in NYS Executive Law § 24.

E. Notifications.

In addition to such other powers or duties the Sheriff of Fulton County may consider in the exercise of the Sheriff's duties with respect to this Emergency Order, the Sheriff is authorized and directed by this order to make limited stops to notify persons suspected of transporting migrants or asylum seekers in the County in violation of the restrictions and regulations of this Emergency Order, and to similarly, notify the owners and operators of facilities suspected of housing any migrants or asylum seekers, or seeking or entering agreements with external municipalities, without the license required by this Emergency Order.

**Section 2. Punishment**

In accordance with Executive Law Section § 24, any person who knowingly violates the provisions of this order shall be guilty of a Class B Misdemeanor.

**Section 3. Effective Date**

This Executive Order shall take effect immediately.

**Section 4. Duration of Local Emergency Order**

The Local Emergency Order shall remain in effect for five days unless sooner modified, extended, or revoked, and may be extended for additional periods not to exceed five days during the pendency of the local state of emergency.

Given, under my hand and the Seal of the County of Fulton this 19th Day of May 2023.

COUNTY OF Fulton County

Scott Horton
Chairman, Fulton County Board of Supervisors



# MADISON COUNTY BOARD OF SUPERVISORS

John M. Becker, Chairman                                138 N. Court St., PO Box 635
Mark Scimone, County Administrator                      Wampsville, NY 13163
Emily Burns, Clerk                                      Phone: 315/366-2201
                                                        Fax: 315/366-2502

## <u>STATE OF EMERGENCY DECLARATION</u>

A State of Emergency is hereby declared in the County of Madison, State of New York effective at 04:00 p.m. on Friday, May 19, 2023.

**WHEREAS,** there is a national immigration crisis at the border between the United States and Mexico in that unprecedented and overwhelming numbers of migrants and asylum seekers are crossing over the open border of the United States; and

**WHEREAS,** the Federal government has failed or refused to anticipate and react to the exigent and emergent circumstances, resulting in thousands of migrants and asylum seekers crossing the U.S. border; and

**WHEREAS,** the Governor of Texas has seen fit to relocate thousands of migrants and asylum seekers crossing the Texas border to New York City, rather than address issues presented to its state and/or the Federal government; and

**WHEREAS,** although New York City has been declared a sanctuary city, it has failed and refused to adequately and humanely address the needs of such migrants and asylum seekers transferred to New York City, and, instead, the city and has decided to, transfer its duties and responsibilities to the other counties adjacent to New York City; and

**WHEREAS**, upon information and belief, City of New York is advertising and printing brochures for migrants and asylum seekers promoting long-term housing solutions in at least one or more county or counties for at least four months and which is believed will be longer, if not permanent; and

**WHEREAS,** according to the promotional brochures by New York City, migrants/asylum seekers will also receive medical care, food, laundry and other necessities, only initially to be funded by the City of New York as an inducement to relocate; and

**WHEREAS,** by way of example, New York City has represented to Orange County officials that approximately only 60 adult male migrant and/or asylum seekers will be transported to Orange County but Orange County has since learned that the City of New York has also sought to house additional hundreds of migrants and/or asylum seekers at additional locations without notifying Orange County, and, as a result, Orange County has publicly stated it can no longer rely on the representations of New York City officials; and

**WHEREAS,** should a similar situation occur here and asylum seekers and/or migrants are transported to Madison County, there is no reason to believe that these individuals will leave Madison County after New York City ceases to pay for the housing and any services they are presently receiving in New York City, or that many more migrants or asylum seekers will not be transported to Madison County; and



# MADISON COUNTY BOARD OF SUPERVISORS

**John M. Becker, Chairman**                          138 N. Court St., PO Box 635
**Mark Scimone, County Administrator**                Wampsville, NY 13163
**Emily Burns, Clerk**                                Phone: 315/366-2201
                                                      Fax: 315/366-2502

**WHEREAS**, there is reasonable apprehension of immediate danger of public emergency of potentially hundreds of persons being transported to Madison County and that Madison County will be responsible for the welfare and public safety of these persons and all others affected thereby in Madison County; and

**WHEREAS,** Madison County is a rural county and is not capable of receiving and humanely sustaining such volume of migrants and asylum seekers that New York City may intend to, or hereafter does, transport to the County, whose presence will spike the number of people in need of government services at all levels of government in the County; and

**WHEREAS,** there is no legal basis to provide adequate services to these migrants or asylum seekers by the County's Department of Social Services because of their age and immigration status; and

**WHEREAS,** Madison County also anticipates the potential for civil disobedience and protesting on this issue both for and against the transportation of migrants/asylum seekers to Madison County; and

**WHEREAS,** through enforcement of local zoning codes, migrants and/or asylum seekers may face refusal or eviction from the illegal hotels and short-term residential facilities, resulting in large-scale homelessness for these migrants and asylum seekers compounding the existing homelessness problems in the City of Oneida and Madison County; and

**WHEREAS,** currently, Madison County has a significant shortage of temporary housing shelter beds and would be unable to provide adequate housing for migrants and/or asylum seekers;

**WHEREAS,** furthermore, Madison County has inadequate infrastructure to meet the needs of large groups of migrants and/or asylum seekers, including, but not limited to, work opportunities, transportation to work, food, medical care, and pharmaceutical opportunities; and

**WHEREAS,** the County is unaware of any lasting reimbursement from the City of New York for expenses which may be incurred as a result of New York City's program to move asylum seekers to other counties; and

**WHEREAS,** due to the above circumstances, I find a reasonable apprehension of immediate danger thereof that public safety is imperiled thereby, for not only migrant and asylum seekers which may be relocated to this County, but also for the residents of Madison County;

**NOW, THEREFORE,** As the Chief Executive of Madison County, I, John M. Becker, Board of Supervisors Chair, exercise the authority given me under Article 2-B, Section 24 of the New York State Executive Law and hereby declare, in order to protect life and property, a State of Emergency within the territorial limits of Madison County and will issue subsequent Emergency Orders when, and as may be, necessary and proper.

**I FURTHER FIND** this State of Emergency does not in any way impact travel or County employees or County operations, is not weather related, and does not suspend County operations.  This State of Emergency Declaration shall take effect immediately, be filed and published as required by law, and individually expire as required by law.



# MADISON COUNTY BOARD OF SUPERVISORS

**John M. Becker, Chairman**                                    138 N. Court St., PO Box 635
**Mark Scimone, County Administrator**                         Wampsville, NY 13163
**Emily Burns, Clerk**                                         Phone: 315/366-2201
                                                               Fax: 315/366-2502

This State of Emergency shall continue for thirty (30) days unless rescinded or amended by subsequent declaration or order.

_John M. Becker_

_____
*(Name)*

*(Signature)*
_____

_Chairman, Board of Supervisors_

_____
*(Title)*

_May 19, 2023_

_____
*(Date)*



# MADISON COUNTY BOARD OF SUPERVISORS

John M. Becker, Chairman
Mark Scimone, County Administrator
Emily Burns, Clerk

138 N. Court St., PO Box 635
Wampsville, NY 13163
Phone: 315/366-2201
Fax: 315/366-2502

## MADISON COUNTY EMERGENCY ORDER

### EMERGENCY ORDER NUMBER 23-1

I, JOHN M. BECKER, as the Chairman of the Board of Supervisors of MADISON COUNTY, in accordance with a declaration of a State of Emergency issued on May 19, 2023, and pursuant to Section 24 of New York State Executive Law, DOES HEREBY ORDER:

As Chairman of the Board of Supervisors, I hereby find and determine that the orderly and humane treatment of migrants and asylum seekers is necessary for the public safety, welfare and health of the residents of Madison County and migrants and asylum seekers alike and that the plan of the City of New York and/or other municipalities to bus migrants and asylum seekers to other counties without regard to available resources, community impacts, funding and capacity to humanely care and provide for migrants and asylum seekers necessitates the issuance of this Emergency Order.

**I.**   **Temporary Prohibition of External Municipal Programs which burden the government of Madison County.**

A.   Effective immediately, no municipality within Madison County may make contracts with persons, businesses, or entities doing business within the territorial limits of Madison County to transport migrants or asylum seekers to locations in the county, or to house persons at locations in the county for any length of time without the express written permission of the Chair of the Board of Supervisors or his designee. In addition, no person or entity may act on behalf of any municipality within Madison County or in performance of a municipal program, or other act funded by such a municipality, to perform an act in violation of this subsection.

B.   No hotel, motel, owner of a multiple dwelling, or shelter within Madison County is permitted to contract or otherwise engage in business with any other municipality ("external municipality" includes other counties OR cities, towns or villages outside Madison County) other than Madison County for the purpose of providing housing or accommodations for migrants or asylum seekers without a permit granted by the County. This prohibition extends to any person or entity participating in an external municipality's government program, or a contract or service funded by an external municipality or acting on behalf of any external municipality.

   1.   Permits will be granted only by the Director of Public Health of the Madison County Public Health Department (the Director). The Director may enlist the services of any other agency within the executive branch of the County government to perform the duties necessary to affect this provision.

   2.   Permits will only be granted where, to the satisfaction of the Director, both the



# MADISON COUNTY BOARD OF SUPERVISORS

John M. Becker, Chairman
Mark Scimone, County Administrator
Emily Burns, Clerk

138 N. Court St., PO Box 635
Wampsville, NY 13163
Phone: 315/366-2201
Fax: 315/366-2502

applicant and the external municipality demonstrate that:

 i. The contract provides that the migrants or asylum seekers will be returned to the external municipality from which they arrived or another location outside the County, within fifteen days; and

 ii. The external municipality demonstrates to the County that it has sufficient funding to sustain the needs of the migrants or asylum seekers during the time of their stay; and

 iii. The external municipality agrees to assume any costs expended by any municipality in the County ("Madison municipalities") including the County itself, for the care, welfare, law enforcement interactions, or other expenses related to municipal interaction with the migrants or asylum seekers upon demand; and

 iv. The applicant and the external municipality each have a performance bond for the conditions set by the permit in the amount of $2,000 per migrant or asylum seeker being housed or boarded at the applicant's facility; and

 v. The occupancy is otherwise lawful and in compliance with applicable NYS fire and occupancy codes.

3. The conditions described in this section will not apply to any contract directly between the external municipality and Madison County itself.

4. Permit renewal will be at the sole discretion of the Director, after consideration of the purpose and intent of the State of Emergency Proclamation that covers this Emergency Order.

## II. Remedies and Enforcement

A. Appearance tickets. The Madison County Sheriff's Office be, and is hereby, authorized to issue appearance tickets for any violation of this Emergency Order with the penalty prescribed by NYS Executive Law § 24(5).

B. Civil penalties.  In addition to those penalties prescribed by NYS Executive Law §24(5), any person who violates any provision of this Emergency Order or any term or condition of any permit issued pursuant to this Emergency Order, shall be liable to a civil penalty, to be determined by a process set by the Director, of not more than $2,000 per migrant/ asylum seeker housed by the external municipality or other violator, for each day or part thereof during which such violation continues. The civil penalties provided by this subdivision shall be recoverable in an action instituted in the name of Madison County and initiated by the Director.



# MADISON COUNTY BOARD OF SUPERVISORS

**John M. Becker, Chairman**                                    138 N. Court St., PO Box 635
**Mark Scimone, County Administrator**                          Wampsville, NY 13163
**Emily Burns, Clerk**                                          Phone: 315/366-2201
                                                                Fax: 315/366-2502

**III.    Abatement.**

Regardless of any other remedy or relief brought by Madison County for any violation, the Director is authorized to direct the County Attorney, or his designee, to commence actions or proceedings in the name of Madison County, in a court of competent jurisdiction, to abate any violation of, or to enforce any provision of this Emergency Order.

**IV.    Remedies not exclusive.**

A.    No remedy or penalty specified in this Emergency Order shall be the exclusive remedy or remedy available to address any violation described in this Emergency Order; all other remedies available at law may be utilized.

B.    Each remedy or penalty specified in this Order shall be in addition to, and not in substitution for or limitation of, any and all other remedies or penalties specified in this Order or in any other applicable state or local law.

C.    Any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any other remedy or penalty specified in this Order or in any other applicable law.

D.    In particular, but not by way of limitation, each remedy and penalty specified in this section shall be in addition to, and not in substitution for or limitation of, the penalties specified in NYS Executive Law § 24, and any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any penalty specified in NYS Executive Law § 24.

**V.    Penalty for Violation of Order.**

1.    In accordance with Executive Law Section § 24, any person who knowingly violates the provisions of this order shall be guilty of a Class B Misdemeanor.

**VI.    Effective Date**.

This Emergency Order shall take effect immediately.

**VII.    Duration of Local Emergency Order**.

This Emergency Order shall remain in effect for five (5) days unless sooner modified, extended, or revoked, and may be extended for additional periods not to exceed five (5) days during the pendency of the local state of emergency.   Failure to obey this Order is a criminal offense, punishable by law under New York State Executive Law § 24(5).



# MADISON COUNTY BOARD OF SUPERVISORS

**John M. Becker, Chairman**                                    138 N. Court St., PO Box 635
**Mark Scimone, County Administrator**                                  Wampsville, NY 13163
**Emily Burns, Clerk**                                             Phone: 315/366-2201
                                                          Fax: 315/366-2502

Signed this the 19th day of May 2023, at four o'clock P.M. in the County of Madison, New York.


*John M. Becker*

_____
*(Name)*

**Daniel S. Degear**

_____
**(Witness Name)**


_____
*(Signature)*


_____
*(Witness Signature)*



**NIAGARA COUNTY LEGISLATURE**
NIAGARA COUNTY COURTHOUSE
175 HAWLEY STREET
LOCKPORT, NY 14094-2470
(716) 439-7000

## LOCAL EMERGENCY ORDER

*Local Emergency Order for Niagara County:*

I, Rebecca Wydysh, the Chairman of the Niagara County Legislature, in accordance with a

declaration of a State of State of Emergency issued May18, 2023 and pursuant to Section 24

of the New York State Executive Law, do hereby order;

**Section 1.   Prohibition of foreign municipal programs that burden the County.**

A. No municipality may make contracts with persons, businesses, or entities doing business within the County to transport migrants or asylum seekers to locations in the County, or to house persons at locations in the County for any length of time without the express written permission of the Chairman of the Niagara County Legislature. In addition, no person or entity may act on behalf of any municipality or in performance of a municipal program, or other act funded by a municipality, to perform an act in violation of this subsection.

B. No hotel, motel, or owner of a multiple dwelling in Niagara County is permitted to contract or otherwise engage in business with any other municipality other than the County of Niagara (an "external municipality") for the purpose of providing housing or accommodations for migrants or asylum seekers without written approval granted by the County.

C. Remedies.

1.   Appearance tickets.   The Sheriff is authorized to issue appearance tickets for any violation of this Emergency Order for the penalty prescribed by NYS Executive Law§ 24(5).

2.   Civil penalties. In addition to those penalties prescribed by NYS Executive Law§ 24(5), any person who violates any provision of this Emergency Order or any term or condition of any license issued pursuant to this Emergency Order, shall be liable to a civil penalty, of not more than $2,000 per migrant/asylum seeker housed by the foreign municipality or other violator, for each day or part thereof during which such violation continues. The civil penalties provided by this subdivision shall be recoverable in an action instituted in the name of this County and initiated by the County Attorney.

3.   Abatement.   Regardless of any other remedy or relief brought by the County for any violation, the County Attorney to commence actions or proceedings in the name of the County, in a court of competent jurisdiction, to abate any violation of, or to enforce any provision of this Emergency Order.

D. Remedies not exclusive.

1.   No remedy or penalty specified in this Emergency Order shall be the exclusive remedy

or remedy available to address any violation described in this Emergency Order.

2.  Each remedy or penalty specified in this Emergency Order shall be in addition to, and not in substitution for or limitation of, the other remedies or penalties specified in this Emergency Order or in any other applicable law.

3.  Any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any other remedy or penalty specified in this Emergency Order or in any other applicable law.

4.  In particular, but not by way of limitation, each remedy and penalty specified in this section shall be in addition to, and not in substitution for or limitation of, the penalties specified in NYS Executive Law § 24, and any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any penalty specified in NYS Executive Law§ 24.

E.  Notifications.

In addition to such other powers or duties the Sheriff of Niagara County may consider in the exercise of the Sheriff's duties with respect to this Emergency Order, the Sheriff is authorized and directed by this order to make limited stops to notify persons suspected of transporting migrants or asylum seekers into the County in violation of the restrictions and regulations of this Emergency Order, and to similarly, notify the owners and operators of facilities suspected of housing any migrants or asylum seekers, or seeking or entering agreements with external municipalities, without the written approval required by this Emergency Order.

## Section 2. **Punishment**

In accordance with Executive Law Section§ 24, any person who knowingly violates the provisions of this order shall be guilty of a Class B Misdemeanor.

## Section 3. **Effective Date**

This Executive Order shall take effect immediately.

## Section 4. **Duration of Local Emergency Order**

The Local Emergency Order shall remain in effect for five days unless sooner modified, extended, or revoked, and may be extended for additional periods not to exceed five days during the pendency of the local state of emergency.

GIVEN, under my hand and the Seal of Niagara County this Eighteenth Day of May, in the year Two Thousand Twenty-Three

Rebecca Wydysh

Chairman Niagara County Legislature

*(Signature)*

*(Date)* 5/18/2023

Jonathan Schelle
*(Witness Name)*

Director of Emerg. Ser.
*(Title)*

*(Witness Signature)*

*(Date)* 5/18/2023



County of Onondaga
## Office of the County Executive
John H. Mulroy Civic Center, 14th Floor
421 Montgomery Street, Syracuse, New York 13202

Phone: 315.435.3516   Fax: 315.435.8582

www.ongov.net

**J. Ryan McMahon II**
*County Executive*

**Ann Rooney**
*Deputy County Executive, Human Services*

**Brian J. Donnelly**
*Deputy County Executive*

**Mary Beth Primo**
*Deputy County Executive, Physical Services*

# LOCAL EMERGENCY ORDER OF THE ONONDAGA COUNTY EXECUTIVE
# ISSUED PURSUANT TO PROCLAMATION OF EMERGENCY
# May 18, 2023 – ORDER NO. 1

WHEREAS, on May 18, 2023, I, J. Ryan McMahon, II, Onondaga County Executive, by the authority vested in me by the Onondaga County Charter, the Onondaga County Administrative Code, and the laws of the State of New York, declared, pursuant to Section 24 of Article 2-B of the New York State Executive Law, that the public safety was sufficiently imperiled such that a Proclamation of Emergency was declared within the territorial limits of Onondaga County;

NOW, THEREFORE, in accordance with authority vested in me by the Onondaga County Charter and Code, and pursuant to Article 2-B, Section 24 of the New York State Executive Law, I hereby promulgate the following Local Emergency Order, effective within the territorial limits of Onondaga County:

Section 1. Prohibition of foreign municipal programs that burden the County to ensure for adequate care and to avoid overtaxing limited resources.

    A.    No municipality may make contracts with persons, businesses, or entities doing business within the County to transport migrants or asylum seekers to locations in the County, or to house persons at locations in the County for any length of time without the express written permission of the County Executive. In addition, no person or entity may act on behalf of any municipality or in performance of a municipal program, or other act funded by a municipality, to perform an act in violation of this subsection.

    B.    No hotel, motel or owner of a multiple dwelling in Onondaga County is permitted to contract or otherwise engage in business with any other municipality other than the County of Onondaga (an "external municipality") for the purpose of providing housing or accommodations for migrants or asylum seekers without a license granted by the County. This prohibition extends to any person or entity participating in an external municipality's government program, or a contract or service funded by an external municipality or acting on behalf of any external municipality.

        1.    Licenses will be granted only by the Commissioner of Health of the Onondaga County Health Department, County Executive, or designee ("Commissioner, County Executive or designee"). The Commissioner, County Executive or designee may enlist the services of any other agency within the executive branch of the County government to perform the duties necessary to effect this provision.

        2.    Licenses will only be granted where, to the satisfaction of the Commissioner, County Executive or designee, both the applicant and the foreign municipality demonstrate that:

            a.    The contract provides that the migrants or asylum seekers will be returned to the foreign municipality from which they arrived or another location outside the County, within thirty (30) days, subject to modification by the County Executive; and

b.    The foreign municipality demonstrates to the County that it has sufficient funding to sustain the needs of the migrants or asylum seekers during the time of their stay; and

c.    The foreign municipality agrees to assume any costs expended by any municipality in the County ("domestic municipalities") including the County itself, for the care, welfare, law enforcement interactions, or other expenses related to municipal interaction with the migrants or asylum seekers upon demand; and

d.    The applicant and the foreign municipality each have a performance bond for the conditions set by the license in the amount of $2,000 per migrant or asylum seeker being housed or boarded at the applicant's facility.

3.    The conditions described in this section will not apply to any contract directly between the foreign municipality and the County.

4.    License renewal will be at the sole discretion of the Commissioner, County Executive or designee, after consideration of the purpose and intent of the Emergency Proclamation that instigated this Emergency Order.

C.    Remedies.

1.    Appearance tickets. Any local law enforcement agency, Commissioner, County Executive or designee, is authorized to issue appearance tickets for any violation of this Emergency Order for the penalty prescribed by NYS Executive Law § 24(5).

2.    Civil penalties. In addition to those penalties prescribed by NYS Executive Law § 24(5), any person who violates any provision of this Emergency Order or any term or condition of any license issued pursuant to this Emergency Order, shall be liable to a civil penalty; to be determined by a process set by the Commissioner, County Executive or designee, of not more than $2,000 per migrant/asylum seeker housed by the foreign municipality or other violator, for each day or part thereof during which such violation continues. The civil penalties provided by this subdivision shall be recoverable in an action instituted in the name of this County and initiated by the County Executive or designee and/or County Attorney.

3.    Abatement. Regardless of any other remedy or relief brought by the County for any violation, the Commissioner, County Executive or designee is authorized to direct the County Attorney to commence actions or proceedings in the name of the County, in a court of competent jurisdiction, to abate any violation of, or to enforce any provision of this Emergency Order.

D.    Remedies not exclusive.

1.    No remedy or penalty specified in this Emergency Order shall be the exclusive remedy or remedy available to address any violation described in this Emergency Order.

2.    Each remedy or penalty specified in this Emergency Order shall be in addition to, and not in substitution for or limitation of, the other remedies or penalties specified in this Emergency Order or in any other applicable law.

3.    Any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any other remedy or penalty specified in this Emergency Order or in any other applicable law.

4.    In particular, but not by way of limitation, each remedy and penalty specified in this section shall be in addition to, and not in substitution for or limitation of, the penalties specified in NYS Executive Law § 24, and any remedy or penalty specified in this section may be pursued

at any time, whether prior to, simultaneously with, or after the pursuit of any penalty specified in NYS Executive Law§ 24.

E.     Notifications. In addition to such other powers or duties the Sheriff of Onondaga County may consider in the exercise of the Sheriff's duties with respect to this Emergency Order, the Sheriff is authorized and directed by this order to make limited stops to notify persons suspected of transporting migrants or asylum seekers into the County in violation of the restrictions and regulations of this Emergency Order, and to similarly, notify the owners and operators of facilities suspected of housing any migrants or asylum seekers, or seeking or entering agreements with external municipalities, without the license required by this Emergency Order.

Section 2. Effective Date.

This Local Emergency Order shall take effect immediately.

Section 3. Duration of Local Emergency Order

This Local Emergency Order shall remain in effect for five (5) days unless sooner modified, extended, or revoked, and may be extended for additional periods not to exceed five (5) days during the pendency of the local state of emergency.

Section 4. Common Name

This Order may be referred to as the "Onondaga County Sustainable Migration Protocol."


**COUNTY OF ONONDAGA**

By:

J. Ryan McMahon, II
*County Executive*

# Oswego County Issues Emergency Order Related to Migrant Crisis

**May 17, 2023**

Oswego County Legislature Chairman James Weatherup issued an Emergency Order Wednesday that bars local entities from engaging in the transport or housing of migrants or asylum seekers without a license and/or written permission from the county.

The Emergency Order follows an emergency declaration issued Monday in response to New York City's attempts to transport and house migrants and asylum seekers in other areas of the state without regard to available resources and community impacts. Oswego County is one of several New York counties that have issued emergency declarations in response to an influx of migrants entering the US following the end of pandemic-era restrictions on border crossings known as Title 42.

Gov. Kathy Hochul issued a statewide emergency declaration Tuesday in response to the influx of migrants, and the governor's office on Wednesday notified Oswego County officials that local sites were being scouted as potential locations to house migrants. County officials are concerned that the potential arrival of migrants and asylum seekers could strain local resources and shift the financial burden to local taxpayers.

"With the ongoing crisis across our country and New York City's recent attempts to transport and house migrants and asylum seekers in counties, we believe this is a necessary action to ensure the humane treatment of these individuals and safeguard our taxpayers from shouldering the economic and social burden of controversial policies from Washington, Albany and New York City," Chairman Weatherup said. "We empathize with the plight of migrants and asylum seekers, many of whom came here because of misguided policies that welcomed them without considering the potential outcome, but we cannot ask the taxpayers of Oswego County to pay for transportation,

Oswego County Issues Emergency Order Related to Migant Crisis

housing and other costs."

Emergency Order 2023-01 temporarily bans municipalities, businesses and other entities in Oswego County from contracting with outside entities for, or engaging in, the transport or housing of migrants or asylum seekers without written permission from Chairman Weatherup.

Owners of hotels, motels and multi-unit housing in the county are expressly prohibited from contracting or engaging with external municipalities for the purpose of providing housing or accommodations for migrants and asylum seekers without a license from the Oswego County Public Health Department.

To obtain such a license, any contract must adhere to several guidelines, including ensuring migrants or asylum seekers will be returned to a location outside Oswego County within 15 days. Any municipality wishing to house migrants in the county must also demonstrate ample funding to cover the full cost of the stay and any other needs of the migrants or asylum seekers, and outside entities must agree to cover any costs incurred by Oswego County and provide proof of a performance bond for the licensing conditions.

Under the Emergency Order, the Oswego County Sheriff's Office may issue appearance tickets for any violations. Violations of the order can result in a Class B misdemeanor and civil penalties of up to $2,000 for each individual housed in violation of the order.

Weatherup said the influx of migrants and asylum seekers is a national crisis and a wide-ranging plan needs to be developed that takes counties' resources and capacity into consideration.

"This cannot be solved at the county level," he said. "We do not have the resources, capacity or authority to provide a solution. Our state and federal governments need to step up."

The Emergency Declaration and Emergency Order will ensure Oswego County is properly compensated for any costs incurred if migrants are housed in the county.

The Emergency Order issued Wednesday is in effect for a period of five days, ending May 20. Weatherup said the order would likely be extended as officials assess the ongoing situation.

# EMERGENCY ORDER

*Local Emergency Order for Schoharie County:*

*I, William A. Federice, the Chairman of Schoharie County Board of Supervisors, in*

*accordance with Schoharie County's Declaration of a State of Emergency issued on*

*19 May 2023 and the Governors Executive Order Declaring a Disaster Emergency in the*

*State of New York, and pursuant to Section 24 of New York State Executive Law, do*

*hereby order:*

### Section 1. Prohibition of foreign programs that burden the County

A. No municipality may make contracts with persons, businesses, or entities doing business with the County to transport migrants or asylum seekers to locations in the County, or to house persons at locations in the County for any length of time without the express written permission of the County Board Chair or his designee. In addition, no person or entity may act on behalf of any municipality or in performance of a municipal program, or other act funded by a municipality, to perform an act in violation of this subsection.

B. No hotel, motel, owner of a multiple dwelling, or shelter in Schoharie County is permitted to contract or otherwise engage in business with any other municipality other than the County of Schoharie (an "external municipality") for the purpose of providing housing or accommodations for migrants or asylum seekers without a license granted by the County. This prohibition extends to any person or entity participating in an external municipality's government program, or a contract or service funded by an external municipality or acting on behalf of any external municipality.

   1. Only the Schoharie County Health Department Director will grant licenses. The Director or her designee may enlist the services of any other agency within the County government to perform the duties necessary to affect this provision.

   2. Licenses will only be granted where, to the satisfaction of the Director or her designee, both the applicant and the foreign municipality demonstrate that:

      i. The contract provides that the migrants or asylum seekers will be returned to the foreign municipality from which they arrived or another location outside the County, within fifteen days: and

      ii. The foreign municipality demonstrates to the County that it has sufficient funding to sustain the needs of the migrants or asylum seekers during the time of their stay;

      iii. The foreign municipality agrees to assume any costs expended by any municipality in the County ("domestic municipalities") including the County itself, for the care, welfare, law enforcement interactions, or other expenses related to municipal interaction with the migrants or asylum seekers upon

       *demand; and*

    *iv.* *The applicant and the foreign municipality each have a performance bond for the conditions set by the license in the amount of $2,000 per migrant or asylum seeker being housed or boarded at the applicant's facility.*

  **3.** *The conditions described in this section will not apply to any contract directly between the foreign municipalities and the County.*

  **4.** *License renewal will be at the sole discretion of the Director or her designee, after consideration of the purpose and intent of the State of Emergency that initiated this Emergency Order.*

**C.** *Remedies*

  **1.** *Appearance tickets. The Schoharie County Sheriff's Office is authorized to issue appearance tickets for any violations of the Emergency Order for the penalty prescribed by New York State Executive Law Section 24(5).*

  **2.** *Civil penalties. In addition to those penalties prescribed by New York State Law 24(5), any person who violates any provision of the Emergency Order of any term or condition of any license issued pursuant to this Emergency Order, shall be liable to a civil penalty, to be determined by a process set by the Director or her designee, of not more than $2,000 per migrant/asylum seeker housed by the foreign municipality or other violator, for each day or part thereof during which such violation continues. The civil penalties provided by this subdivision shall be recoverable in an action instituted in the name of this County and initiated by the Director or her designee.*

  **3.** *Abatement. Regardless of any other remedy or relief brought by the County for any violation, the Director or her designee is authorized to direct the County Attorney to commence actions or proceedings in the name of the County, in a court of competent jurisdiction, to abate any violation of, or to enforce any provision of this Emergency Order.*

**D.** *Remedies not exclusive*

  **1.** *No remedy or penalty specified in this Emergency Order shall be the exclusive remedy or remedy available to address any violation described in this Emergency Order.*

  **2.** *Each remedy or penalty specified in the Emergency Order shall be in addition to, and not in substitution for or limitation of, the other remedies or penalties specified in this Emergency Order or in any other applicable law.*

  **3.** *Any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any other remedy or penalty specified in this Emergency Order or in any other applicable law.*

  **4.** *In particular, but not by way of limitation, each remedy and penalty specified in this section shall be in addition to, and not in substitution for or limitation of, the penalties specified in New York State Law Section 24, and any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any penalty specified in New York State Law Section 24.*

**Section 2. Punishment**

In accordance with Executive Law Section 24, any person who knowingly violates the provisions of this order shall be guilty of a Class B Misdemeanor.

**Section 3. Effective Date**

This Executive Order shall take place at Noon, 19 May 2023.

**Section 4. Duration of Local Emergency**

The Local Emergency Order shall remain in effect for five days unless sooner modified, extended, or revoked, and may be extended for additional periods not to exceed five days during the pendency of the local state of emergency.

Failure to obey this order is a criminal offense, punishable by law under New York State Executive Law Section 24(5).

Signed this the 19th day of May 2023 at 09:00 hours in, Schoharie County, New York.


_____
William A. Federice, Chairman
Schoharie County Board of Supervisor

# DECLARATION OF A LOCAL STATE OF EMERGENCY

## Schuyler County Sustainable Migration Plan

I, **Carl H. Blowers**, Chair of the County Legislature of the County of Schuyler, State of New York, do hereby declare as an **EXECUTIVE ORDER** the following:

**WHEREAS**, there is a national immigration crisis at the border between the United States and Mexico in that unprecedented and overwhelming numbers of illegal immigrants, migrants and/or asylum seekers are crossing over the open border of the United States; and

**WHEREAS**, over the past several months, tens of thousands of illegal aliens have arrived in New York City; and

**WHEREAS**, the Mayor of the City of New York, Eric Adams, has declared the increase in illegal aliens in that City to be a humanitarian crisis; and

**WHEREAS**, the U.S. Department of Health and Human Services, under President Joe Biden, is planning for the federal Public Health Emergency for COVID-19 to expire on May 11, 2023; and

**WHEREAS**, upon the expiration of the federal Health Emergency for COVID-19, the Centers for Disease Control and Prevention order under Title 42, which suspended the allowance of certain persons traveling from Canada or Mexico, also expires on May 11, 2023; and

**WHEREAS**, with the lifting of the Title 42 order, the Mayor of the City of New York expects an even larger influx of illegal aliens and has put in place plans to send illegal aliens from the City of New York to other areas throughout the State of New York; and

**WHEREAS**, as of the 2020 census, the population of Schuyler County was 17,898, making the County the second-least populous county in New York and, therefore, especially sensitive to any change in population, with even a small increase in the number of persons within the County potentially constituting a significant increase; and

**WHEREAS**, the County of Schuyler does not have the capacity or resources to receive and sustain an significant increase in the number of illegal immigrants, migrants and/or asylum seekers; and

**WHEREAS**, based on the foregoing and other relevant considerations, the immediate danger of a significant increase in the number of illegal aliens, migrants and/or asylum seekers entering the County of Schuyler imperils the public safety within the County of Schuyler; and

**WHEREAS,** on May 9, 2023, New York State Governor Kathy Hochul issued an Executive Order, Executive Order 28, which order the Governor's office maintains[1] will "boost Support for Asylum Seekers by expanding state and municipal procurement capabilities and increasing capacity of national guard to provide logistical support;" and

---

[1] https://www.governor.ny.gov/news/title-42-expires-governor-hochul-issues-executive-order-providing-state-and-municipalities

**WHEREAS**, the County of Schuyler is bordered to its east by the County of Tompkins, which county effectively declared itself a "sanctuary county," under a February 21, 2017 resolution of the Tompkins County Legislature, entitled " Public Safety for All," and which county contains, within its borders, the City of Ithaca, which city has adopted a local ordinance, "Human Rights Protection, Article VI, Sanctuary City," which provides for, among other prohibitions, the prohibition of various enforcement activities for purpose of enforcing federal immigration laws; and

**WHEREAS**, I have reason to believe that illegal immigrants, migrants and/or asylum seekers could be transported to Schuyler County; and there is no reason to believe that these migrants or asylum seekers will leave Schuyler County; and

**WHEREAS**, there is a reasonable apprehension of immediate danger of public emergency of significant numbers of persons being transported to Schuyler County and that Schuyler County will be responsible for the public safety and public health of these persons and all others effected in Schuyler County; and

**WHEREAS**, The County of Schuyler is not capable of receiving and sustaining any significant volume of migrants and asylum seekers, whose presence will spike the number of people in need of government services at all levels of government in the County; and

**WHEREAS**, there is no legal basis to provide adequate services to these illegal immigrants, migrants and/or asylum seekers by the County's Department of Social Services because of their age and immigration status; and

**WHEREAS**, The County of Schuyler anticipates potential civil disobedience and protesting on this issue both for and against the transportation of illegal immigrants, migrants and/or asylum seekers to Schuyler County; and

**WHEREAS**, that due to the above circumstances, I find reasonable apprehension of the immediate danger thereof that public safety and public health is imperiled thereby, for not only the illegal immigrants, migrants and/or asylum seekers, but also to the other affected residents of Schuyler County; and

**WHEREAS**, pursuant to NYS Executive Law § 24, when a State of Emergency is in effect, the Chair of the County Legislature may promulgate local emergency orders to protect life and property or to bring the emergency situation under control, and by law, upon reconsidering all the relevant facts and circumstances, such an order may be extended for additional periods not exceeding five days each during the pendency of the state of emergency; and

**WHEREAS**, if it were allowed for the City of New York or other municipalities to flood the County with persons needing services, as described in this Declaration, this crisis would only worsen.

**NOW, THEREFORE, I, CARL H. BLOWERS,** Chair of the Schuyler County Legislature, by virtue of the authority vested in me as Chief Executive of Schuyler County, do hereby **find and order** as follows:

### Section 1. <u>The local State of Emergency</u>

A Local State of Emergency is hereby declared to exist within the County of Schuyler and shall remain in effect unless it is terminated, rescinded, or modified at an earlier date.

**Section 2. <u>Prohibition of foreign municipal programs that burden the County.</u>**

   A.  No municipality may make contracts with persons, businesses, or entities doing business within the County to transport illegal immigrants, migrants and/or asylum seekers to locations in the County, or to house such persons at locations in the County for any length of time without the express written permission of the County. In addition, no person or entity may act on behalf of any municipality or in performance of a municipal program, or other act funded by a municipality, to perform an act in violation of this subsection.

   B.  No hotel, short-term rental, motel, or owner of a multiple dwelling in Schuyler County is permitted to contract or otherwise engage in business with any "foreign municipality" (defined as "any municipality other than the County of Schuyler") for the purpose of providing housing or accommodations for illegal immigrants, migrants and/or asylum seekers without a license granted by the County.

       1.  Licenses will be granted only by the Public Health Director of the Schuyler County Department of Health, subject to review by the County's Board of Health.  The Director may enlist the services of any other agency within County government to perform the duties necessary to effect this provision.

       2.  Licenses will only be granted where, to the satisfaction of the Director,  and subject to review by the County Board of Health, both the applicant and the foreign municipality, demonstrate that:

          a.  The contract provides that the illegal immigrants, migrants and/or asylum seekers will be returned to the foreign municipality from which they arrived or another location outside the County within fifteen (15) days; and

          b.  The foreign municipality demonstrates to the County that it has sufficient funding to sustain the needs of the illegal immigrants, migrants and/or asylum seekers during the time of their stay; and

          c.  The foreign municipality agrees to assume any costs expended by any municipality in the County ("domestic municipalities") including the County itself, for the care, welfare, law enforcement interactions, or other expenses related to municipal interaction with the illegal immigrants, migrants and/or asylum seekers upon demand; and

    d.  The applicant and the foreign municipality each have a performance bond for the conditions set by the license in the amount of $2,000 per illegal immigrants, migrants and/or asylum seekers being housed or boarded at the applicant's facility.

3.  The conditions described in this section will not apply to any contract directly between the foreign municipality and the County, duly approved by the Schuyler County Legislature.

4.  License renewal will be at the sole discretion of the Director, and subject to review by the County's Board of Health, after consideration of the purpose and intent of the State of Emergency that instigated this Emergency Order.

C.  <u>Remedies</u>.

1.  Appearance tickets. The Sheriff is authorized to issue appearance tickets for any violation of this Emergency Order for the penalty prescribed by NYS Executive Law § 24(5), to wit, a class B misdemeanor, prosecutable in the courts of this state pursuant to the Criminal Procedure Law of the State of New York (see Section 3, Penalties, below).

2.  Civil penalties. In addition to those penalties prescribed by NYS Executive Law § 24(5), any person who violates any provision of this Emergency Order or any term or condition of any license issued pursuant to this Emergency Order, shall be liable to a civil penalty, of not more than $2,000 per migrant/asylum seeker housed by the foreign municipality or other violator, for each day or part thereof during which such violation continues. The civil penalties provided by this subdivision shall be recoverable in an action instituted in the name of this County and initiated by the County Attorney.

3.  Abatement. Regardless of any other remedy or relief brought by the County for any violation, the County Attorney is and shall be authorized to commence actions or proceedings in the name of the County, in a court of competent jurisdiction, to abate any violation of, or to enforce any provision of this Emergency Order.  The County Attorney may enlist the services of any other agency within County government to perform the duties necessary to effect this provision.

D.  Remedies not exclusive.

1.  No remedy or penalty specified in this Emergency Order shall be the exclusive remedy or remedy available to address any violation described in this Emergency Order.

2. Each remedy or penalty specified in this Emergency Order shall be in addition to, and not in substitution for or limitation of, the other remedies or penalties specified in this Emergency Order or in any other applicable law.

3. Any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any other remedy or penalty specified in this Emergency Order or in any other applicable law.

4. In particular, but not by way of limitation, each remedy and penalty specified in this section shall be in addition to, and not in substitution for or limitation of, the penalties specified in NYS Executive Law § 24, and any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any penalty specified in NYS Executive Law§ 24.

E. Notifications. In addition to such other powers or duties the Sheriff of Schuyler County may consider in the exercise of the Sheriff's duties with respect to this Emergency Order, the Sheriff is authorized and directed by this order to make limited stops to notify persons suspected of transporting migrants or asylum seekers into the County in violation of the restrictions and regulations of this Emergency Order, and to similarly, notify the owners and operators of facilities suspected of housing any migrants or asylum seekers, or seeking or entering agreements with external municipalities, without the license required by this Emergency Order.

## Section 3. <u>Penalties.</u>

In accordance with Executive Law Section § 24, any person who knowingly violates the provisions of this order shall be guilty of a Class B Misdemeanor.

## Section 4. <u>Effective Date</u>

This Executive Order shall take effect immediately.

## Section 5. <u>Duration of Local Emergency Order</u>

The Local Emergency Order shall remain in effect for five days unless sooner modified, extended, or revoked, and may be extended for additional periods not to exceed five days during the pendency of the local state of emergency.

## Section 6.  <u>Public Notice, Execution, and Filing.</u>

This Local Emergency Order shall be published as soon as practicable in a newspaper of general circulation in the area affected by such order and transmitted to the radio and television media for publication and broadcast. This Local Emergency Order shall be executed in quadruplicate and shall be filed within seventy-two hours or as soon thereafter as

practicable in the office of the clerk of the Schuyler County Legislature, the office of the county clerk, the office of the secretary of state and the state office of emergency management within the division of homeland security and emergency services.

**GIVEN,** under my hand and the Seal of the County of Schuyler in Village of Watkins Glen, this 11th Day of May, in the year Two Thousand Twenty-Three.

**COUNTY OF SCHUYLER**

S/ Carl H. Blowers

_____

Hon. Carl H. Blowers
Chair of the County Legislature

# EMERGENCY ORDER
## Executive Order # 2023-01.2

**Local Emergency Order for Tioga County**

I, Martha C. Sauerbrey, Chairwoman of the Tioga County Legislature, in accordance with a declaration of a State of Emergency issued May 11, 2023, and pursuant to Section 24 of New York State Executive Law, do hereby order:

## Section 1. <u>Prohibition of foreign municipal programs that burden the County.</u>

A. No municipality may make contracts with persons, businesses, or entities doing business within the County to transport migrants or asylum seekers to locations in the County, or to house persons at locations in the County for any length of time without the express written permission of the County Legislative Chair. In addition, no person or entity may act on behalf of any municipality or in performance of a municipal program, or other act funded by a municipality, to perform an act in violation of this subsection.

B. No hotel, motel, or owner of a multiple dwelling in Tioga County is permitted to contract or otherwise engage in business with any other municipality other than the County of Tioga (an "external municipality") for the purpose of providing housing or accommodations for migrants or asylum seekers without a license granted by the County.

C. Remedies.

1. Appearance tickets. The Sheriff is authorized to issue appearance tickets for any violation of this Emergency Order for the penalty prescribed by NYS Executive Law § 24(5).

2. Civil penalties. In addition to those penalties prescribed by NYS Executive Law § 24(5), any person who violates any provision of this Emergency Order or any term or condition of any license issued pursuant to this Emergency Order, shall be liable to a civil penalty, of not more than $2,000 per migrant/asylum seeker housed by the foreign municipality or other violator, for each day or part thereof during which such violation continues. The civil penalties provided by this subdivision shall be recoverable in an action instituted in the name of this County and initiated by the County Attorney.

Case 7:23-cv-04215-UA   Document 32-3   Filed 05/22/23   Page 83 of 87

Local Emergency Order for Tioga County 1

    3.     Abatement. Regardless of any other remedy or relief brought by the County for any violation, the County Attorney to commence actions or proceedings in the name of the County, in a court of competent jurisdiction, to abate any violation of, or to enforce any provision of this Emergency Order.

D. Remedies not exclusive.

    1.     No remedy or penalty specified in this Emergency Order shall be the exclusive remedy or remedy available to address any violation described in this Emergency Order.

    2.     Each remedy or penalty specified in this Emergency Order shall be in addition to, and not in substitution for or limitation of, the other remedies or penalties specified in this Emergency Order or in any other applicable law.

    3.     Any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any other remedy or penalty specified in this Emergency Order or in any other applicable law.

    4.     In particular, but not by way of limitation, each remedy and penalty specified in this section shall be in addition to, and not in substitution for or limitation of, the penalties specified in NYS Executive Law § 24, and any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any penalty specified in NYS Executive Law§ 24.

E.   Notifications.

In addition to such other powers or duties the Sheriff of Tioga County may consider in the exercise of the Sheriff's duties with respect to this Emergency Order, the Sheriff is authorized and directed by this order to make limited stops to notify persons suspected of transporting migrants or asylum seekers into the County in violation of the restrictions and regulations of this Emergency Order, and to similarly, notify the owners and operators of facilities suspected of housing any migrants or asylum seekers, or seeking or entering agreements with external municipalities, without the license required by this Emergency Order.

## Section 2. **Punishment**

In accordance with Executive Law Section § 24, any person who knowingly violates the provisions of this order shall be guilty of a Class B Misdemeanor.

## Section 3. **Effective Date**

This Executive Order shall take effect immediately.

## Section 4. Duration of Local Emergency Order

The Local Emergency Order shall remain in effect for five days unless sooner modified, extended, or revoked, and may be extended for additional periods not to exceed five days during the pendency of the local state of emergency.

The Local Emergency Order is being extended for an additional 5 days:

5/21/23 thru 5/25/23.

GIVEN, under my hand and the Seal of the County of Tioga this Nineteenth Day of May, in the year Two Thousand Twenty-Three

COUNTY OF TIOGA

Martha C. Sauerbrey

Tioga County Legislative Chair

5/22/23, 12:35 PM
Case 7:23-cv-04215-UA Document 32-3 Filed 05/22/23 Page 85 of 87
Wyoming-County-Local-Order-eff.-05-18-23-signed_001.jpg (791×1024)



**OFFICE OF THE BOARD
OF SUPERVISORS**

Government Center
143 N. Main Street
Warsaw, NY 14569

**Rebecca Ryan**
Chairwoman of the Board

Phone 585-786-8800
Fax 585-786-8802

## EMERGENCY ORDER

### Local Emergency Order for Wyoming County
### dated May 18, 2023

I, Rebecca J. Ryan, Chairwoman of the Wyoming County Board of Supervisors, in accordance with a declaration of a State of Emergency issued May 18, 2023, and pursuant to Article 2-B, Section 24 of New York State Executive Law, do here by order:

**Section 1. <u>Prohibition of foreign municipal programs that burden the County.</u>**

    A. No municipality or entity may make contracts with persons, businesses, or entities doing business within the County to transport migrants or asylum seekers to locations in the County, or to house persons at locations in the County for any length of time without the express written permission of the Chairwoman of the Wyoming County Board of Supervisors. In addition, no person or entity may act on behalf of any municipality or in performance of a municipal program, or other act funded by a municipality, to perform an act in violation of this subsection.

    B. No hotel, motel, or owner of a multiple dwelling in Wyoming County is permitted to contract or otherwise engage in business with any other municipality other than the County of Wyoming (an "external municipality") for the purpose of providing housing or accommodations for migrants or asylum seekers without written approval granted by the County.

    C. Remedies.

        I. Appearance tickets. The Sheriff is authorized to issue appearance tickets for any violation of this Emergency Order for the penalty prescribed by NYS Executive Law § 24(5).

        2. Civil penalties. In addition to those penalties prescribed by NYS Executive Law § 24(5), any person who violates any provision of this Emergency Order or any term or condition of any license issued pursuant to this Emergency Order, shall be liable to a civil penalty, of not more than $2,000 per migrant/asylum seeker housed by the foreign municipality or other violator, for each day or part thereof during which such violation continues. The civil penalties provided by this subdivision shall be recoverable in an action instituted in the name of this County and initiated by the County Attorney.

3.    Abatement. Regardless of any other remedy or relief brought by the County for any violation, the County Attorney to commence actions or proceedings in the name of the County, in a court of competent jurisdiction, to abate any violation of, or to enforce any provision of this Emergency Order.

D. Remedies not exclusive.

1.    No remedy or penalty specified in this Emergency Order shall be the exclusive remedy or remedy available to address any violation described in this Emergency Order.

2.    Each remedy or penalty specified in this Emergency Order shall be in addition to, and not in substitution for or limitation of, the other remedies or penalties specified in this Emergency Order or in any other applicable law.

3.    Any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any other remedy or penalty specified in this Emergency Order or in any other applicable law.

4.    In particular, but not by way of limitation, each remedy and penalty specified in this section shall be in addition to, and not in substitution for or limitation of, the penalties specified in NYS Executive Law § 24, and any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any penalty specified in NYS Executive Law § 24.

E. Notifications.

In addition to such other powers or duties the Sheriff of Wyoming County may consider in the exercise of the Sheriffs duties with respect to this Emergency Order, the Sheriff is authorized and directed by this order to make limited stops to notify persons suspected of transporting migrants or asylum seekers into the County in violation of the restrictions and regulations of this Emergency Order, and to similarly, notify the owners and operators of facilities suspected of housing any migrants or asylum seekers, or seeking or entering agreements with external municipalities, without the written approval required by this Emergency Order.

## Section 2. **Punishment**

In accordance with Executive Law Section §24, any person who knowingly violates the provisions of this order shall be guilty of a Class B Misdemeanor.

## Section 3. **Effective Date**

This Emergency Order shall take effect immediately.

## Section 4. **Duration of Local Emergency Order**

The Local Emergency Order shall remain in effect for five days unless sooner modified, extended, or revoked, and may be extended for additional periods not to exceed five days during the pendency of the local state of emergency.

Given, under my hand and the Seal of the County of Wyoming this Eighteenth Day of May,
in the year Two Thousand Twenty-Three.

Rebecca J. Ryan _____          _____
(Name)                                    (Signature)

Chairwoman, Wyoming County Board of Supervisors     ____05/18/23____
(Title)                                   (Date)

Brian Meyers, Dir. Fire & Emergency Mgmt. ___        _____
(Name)                                    (Signature)

Witness _____       ____05/18/23____
(Title)   County Attorney                 (Date)