USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___12/19/2025___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PALISADES ESTATES EOM, LLC, et al.,

Plaintiffs,

-against-

COUNTY OF ROCKLAND, et al.,

Defendants.

**23 CV 4215 (NSR)**

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

Palisades Estates EOM, LLC ("Armoni"), Newburgh EOM LLC d/b/a Crossroads Hotel ("Crossroads"), Ratan Newburgh LLC d/b/a Ramada by Wyndham ("Ramada"), South Road Hospitality, LLC ("South Road"), Hudson Conference Center, LLC ("Hudson Conference"), Route 9 Hotel LLC ("Route 9"), Sai Ram Management LLC ("Sai Ram"), Sandip Patel ("Patel"), AIMS Newburgh Management LLC ("AIMS Newburgh"), AIMS Orangeburg Management LLC ("AIMS Orangeburg"), CWP Syracuse I LLC ("CWP Syracuse"), ES Albany LLC ("ES Albany") (collectively, the "Hotel Plaintiffs" or "Hotels"), move for limited reconsideration of the Court's May 5, 2025 Opinion & Order.

For the reasons set forth below, the Hotel Plaintiffs' Motion for Reconsideration is DENIED.

## BACKGROUND

### A. Factual Background

The Court assumes familiarity with the facts, procedural history, and the detailed analysis in the May 5, 2025 Opinion & Order. (ECF No. 417, Opinion & Order) Only those facts relevant to reconsideration are summarized.

1

The Hotel Plaintiffs entered into agreements with Rapid Reliable Testing, LLC ("RRT"), which itself contracted with the City of New York to provide temporary accommodations for asylum seekers ("Asylum Refugees"). (ECF No. 200, SAC ¶¶ 14, 121.) The Hotels allege that the County and Town Defendants[1] issued executive orders, undertook building-code enforcement actions, and commenced state-court proceedings aimed at preventing the Hotels from housing Asylum Refugees. (*Id.* at ¶¶ 437-442.) According to Hotel Plaintiffs, these actions interfered with their ability to perform their contracts, caused financial losses, and were motivated by discriminatory animus toward the Asylum Refugees to whom Hotel Plaintiffs sought to provide lodging. (*Id.*)

In dismissing the Second Amended Complaint ("SAC"), the Court held, among other things, that the Hotels lacked standing to assert claims predicated on alleged discrimination against Asylum Refugees and that, regardless of standing, each claim independently failed to state a claim under Rule 12(b)(6). (Opinion & Order at 55-58.)

---

[1] Defendants refers to County of Rockland, New York, and Edwin J. Day, in his official capacity as County Executive of Rockland County (together, "Rockland"), County of Orange, New York, and Steven M. Neuhaus, in his official capacity as County Executive of Orange County ("Orange"), the Town of Orangetown, New York, and Teresa M. Kenny, in her official capacity as Town Supervisor of the Town of Orangetown (together "Orangetown"), the Town of Newburgh, New York, Gilbert J. Piaquadio, in his official capacity as Town Supervisor of the Town of Newburgh (together, "Newburgh"), County of Dutchess, New York, William F.X. O'Neil, in his official capacity as County Executive of Dutchess County, Dutchess Department of Community and Family Services, Sabrina J. Marzouka, in her official capacity as Commissioner of the Dutchess County Department of Family Services (together, "Dutchess"), Town of Poughkeepsie ("Poughkeepsie"), County of Rensselaer, New York ("Rensselaer"), County of Herkimer, New York ("Herkimer"), County of Oneida, New York ("Oneida"), County of Broome, New York ("Broome"), County of Genesee, New York ("Genesee"), County of Orleans, New York ("Orleans"), County of Saratoga, New York ("Saratoga"), County of Greene, New York ("Greene"), County of Sullivan, New York ("Sullivan"), County of Onondaga ("Onondaga"), County of Chautauqua ("Chautauqua"), County of Fulton ("Fulton"), County of Madison ("Madison"), County of Niagara ("Niagara"), County of Oswego ("Oswego"), County of Otsego ("Otsego"), County of Schoharie ("Schoharie"), County of Schuyler ("Schuyler"), County of Suffolk ("Suffolk"), County of Tioga ("Tioga"), County of Wyoming ("Wyoming") (together with Rockland, Orange, Dutchess, Rensselaer, Herkimer, Oneida, Broome, Genesee, Orleans, Saratoga, Greene, Sullivan, Onondaga, Chautauqua, Fulton, Madison, Niagara, Oswego, Otsego, Schoharie, Schuyler, Suffolk, and Tioga, the "Counties"), Town of Salina ("Salina"), and Town of Colonie ("Colonie") (Orangetown, Newburgh, Poughkeepsie, Salina, and Colonie, the "Towns").

The Hotels now seek reconsideration of the standing portion of that Opinion. (ECF No. 419, Pltfs. Mot.)

## B. Procedural History

Plaintiffs commenced this action on May 22, 2023 by filing a Complaint and, the same day, a First Amended Complaint. (ECF Nos. 1, 32.) Plaintiffs filed their Second Amended Complaint ("SAC") on July 13, 2023, asserting eight causes of action arising under the United States Constitution, Title II of the Civil Rights Act, 42 U.S.C. § 1981, and related federal and state law. (*See generally* SAC.) On May 5, 2025, the Court dismissed the SAC in its entirety. (*See generally* Opinion & Order).

On May 19, 2025, the Hotels moved for limited reconsideration under Rule 60(b) and Local Civil Rule 6.3. asserting that the Court overlooked controlling authority, concerning vendor standing. (ECF 419-20, Pltfs. Mot. & Pltfs. Mem.) Defendants filed an Opposition (ECF No. 438, Dfts. Opp.), and the Hotel Plaintiffs submitted a Reply (ECF 439, Pltfs. Reply). While briefing was ongoing, Plaintiffs filed a Third Amended Complaint ("TAC"), which superseded the SAC. (ECF No. 432, TAC.)

## LEGAL STANDARD

Reconsideration of a Court's previous order is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005) (internal citation and quotation omitted), *aff'd sub nom. Tenney v. Credit Suisse First Boston Corp.*, Nos. 05 Civ. 3430, 05 Civ. 4759 & 05 Civ. 4760, 2006 WL 1423785, at *1 (2d Cir. 2006). Motions for reconsideration are governed by Local Civil Rule 6.3 and Federal Rule of Civil Procedure 60(b), and "[t]he standard for granting a motion for reconsideration . . . is strict." *Targum v. Citrin Cooperman & Co., LLP*,

3

No. 12 Civ. 6909 (SAS), 2013 WL 6188339, at *1 (S.D.N.Y. Nov. 25, 2013).  They are "addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances."  *Mendell ex rel. Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990).

Critically, a motion to reconsider "is not a vehicle for . . . presenting the case under new theories . . . or otherwise taking a second bite at the apple."  *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)  (quotation and citation omitted); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (quoting *Polsby v. St. Martin's Press*, No. 97 Civ. 0690(MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)) (in moving for reconsideration, "'a party may not advance new facts, issues, or arguments not previously presented to the Court.'").  Such motions are generally denied "'unless the moving party can point to controlling decisions or data that the court overlooked.'"  *Analytical Surveys*, 684 F.3d at 52 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

## DISCUSSION

### A. Defendants' Mootness Argument Fails

Defendants argue that Hotel Plaintiffs' motion for reconsideration is moot because the Plaintiffs filed a TAC after the Court issued its May 5, 2025 Opinion & Order. (Dfts. Opp. at 5.) The Court disagrees. The filing of an amended pleading does not automatically moot a motion for reconsideration where the motion challenges a legal determination that continues to govern the operative complaint. *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (reconsideration appropriate to address alleged legal error); *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016) (Article III standing must exist at all stages of litigation).

That principle applies here because the TAC advances the same standing theory previously asserted in the SAC—namely, that the Hotel Plaintiffs possess standing in their own right under the vendor-standing doctrine. (SAC ¶¶ 30–31; TAC ¶¶ 81–87.) Where an amended pleading does not materially alter the standing theory already addressed by the Court, reconsideration of the Court's standing determination is not moot, as that determination would continue to control the Court's jurisdictional analysis of the operative complaint. *See Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020) (recognizing that amendment does not automatically moot motions where the same legal issues persist); *Carter*, 822 F.3d at 54.

Courts typically find reconsideration motions moot after amendment only where granting reconsideration would require reviving or altering a superseded pleading, rendering any ruling advisory. *See Greenblatt v. Gluck*, 265 F. Supp. 2d 346, 351 (S.D.N.Y. 2003) (reconsideration moot where amended complaint rendered prior pleading incapable of reinstatement); *Meserole v. Sony Corp. of Am.*, No. 08 Civ. 8987 (RPP), 2009 WL 2001451, at *1 (S.D.N.Y. July 9, 2009) (reconsideration moot where amended complaint supplanted original pleading and materially altered the claims.) That circumstance is not present here. The Hotels do not seek to revive the SAC or to reinstate dismissed claims; instead, they request reconsideration of a jurisdictional ruling that remains relevant to the standing inquiry under the TAC.

Because the operative complaint asserts the same standing theory previously adjudicated, the Court's standing determination remains a live jurisdictional issue. Defendants' mootness argument therefore is unpersuasive, and the Court accordingly proceeds to the merits of Hotel Plaintiffs' motion for reconsideration.

5

**B. Hotel Plaintiffs Lack Standing**

The Hotel Plaintiffs contend that the Court erred in concluding that they lack standing to challenge governmental actions allegedly directed at asylum seekers they sought to accommodate. (Pltfs. Mem. at 2–10.) Specifically, they argue that, under the vendor–vendee standing doctrine recognized in *Craig v. Boren*, 429 U.S. 190 (1976), and reaffirmed in *Gazzola v. Hochul*, 88 F.4th 186 (2d Cir. 2023), they have standing as vendors to challenge governmental actions that discriminate against their customers and, in turn, harm their operations. (*Id*. at 5–7.) The Court disagrees.

i.    **Hotel Plaintiffs Fail to Satisfy Article III Standing Requirements**

To establish Article III standing, a plaintiff must show (1) a concrete and particularized injury, (2) a causal connection between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Failure to establish any one of these elements is fatal to standing. (*Id.*) In this case, the Hotel Plaintiffs fail to meet these requirements, particularly the injury-in-fact and causation elements.

First, the Hotels' alleged injuries are economic consequences flowing from their voluntary contractual arrangements with New York City or its agents, not direct harms to their legal rights or operations. (SAC ¶¶ 51, 122.) The Hotels claim they were harmed by governmental actions allegedly discriminating against asylum seekers, resulting in lost contract revenue and litigation-related expenses. (Pltfs. Mem. at 4.) But such harms reflect exposure to contractual and market risk rather than the imposition of any legal restriction on the Hotels themselves. These alleged injuries are therefore too attenuated to establish a concrete injury in fact. Economic injuries stemming from third-party decisions or market conditions are insufficient to satisfy the injury-in-

fact requirement unless they result from a direct regulation of the plaintiff's conduct or legal rights. *Warth v. Seldin*, 422 U.S. 490, 509 (1975) (economic injury alone is insufficient where the challenged conduct does not directly regulate the plaintiff's activities).

Second, the Hotels cannot establish causation. The Counties' emergency orders did not directly regulate the Hotels or restrict their ability to operate. Rather, the orders addressed the placement and movement of asylum seekers during declared emergencies, not the Hotels' business operations or contractual relationships. (SAC ¶¶ 9, 51; Opinion & Order at 112–13.) Any alleged harm therefore depends on the independent decisions of third parties—namely, New York City and its agents, who selected the Hotels, entered into contracts with them, and determined whether those arrangements would continue. This breaks the causal chain required for Article III standing. *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42–43 (1976) (no standing where injury depends on independent decisions of third parties).

Because the Hotels fail to establish injury in fact or causation, they lack Article III standing, and the Court need not address redressability. *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018) (the remaining elements of standing not reached where plaintiff failed to establish first element.)

    ii. **Hotel Plaintiffs Cannot Establish Vendor Standing Under the Vendor–Vendee Doctrine**

Plaintiffs rely on the vendor–vendee standing doctrine as a derivative theory of standing after failing to establish injury and causation in their own right. (*See generally* Pltf. Mem.) That reliance is misplaced. Vendor standing is a narrow exception that permits a vendor to challenge a law that discriminates against its customers only where the law directly regulates the vendor's own conduct in the marketplace and thereby injures the vendor in its capacity as a seller. *Craig v. Boren*,

429 U.S. 190, 194–96 (1976); *Gazzola v. Hochul*, 88 F.4th 186, 195–96 (2d Cir. 2023). The doctrine does not extend to circumstances in which a plaintiff alleges only downstream economic effects resulting from governmental action directed at third parties. (Dfts. Opp. at 8–10**).**

In *Craig*, the Supreme Court held that a beer vendor had standing to challenge an Oklahoma statute that prohibited the sale of 3.2% beer to men between the ages of eighteen and twenty-one. *Craig,* 429 U.S. at 192–93. The statute operated directly on the vendor: it made unlawful the vendor's sale of beer to a defined class of customers and subjected the vendor to penalties for engaging in otherwise lawful commercial conduct. (*Id*. at 194.) Similarly, in *Gazzola*, the Second Circuit recognized vendor standing where New York statutes directly regulated firearms dealers themselves by imposing extensive licensing, inventory-control, inspection, employee-training, and security requirements that governed how those dealers could operate their businesses and transact with customers. *Gazzola*, 88 F.4th at 192–93, 195–96; (Dfts. Opp. at 8–9). As in *Craig*, the plaintiffs' injury arose from legal constraints directly imposed on their conduct as sellers, not merely from economic consequences of reduced demand. (*Id*.)

The Counties' emergency orders bear no resemblance to the regulatory schemes at issue in *Craig* or *Gazzola*. The orders did not regulate the Hotels as vendors, restrict their ability to rent rooms to the public, impose licensing or operational requirements, or otherwise govern their participation in the lodging market. (SAC ¶¶ 51, 122.) Unlike the statutes in *Craig* and *Gazzola*, which directly regulated the plaintiffs' ability to sell goods or conduct business, the emergency orders imposed no legal constraint on the Hotels' own commercial conduct. (*See generally Craig* at 194-97; *Gazzola* at 192–93, 195–96.) The orders instead addressed the movement and placement of asylum seekers during declared emergencies, leaving the Hotels free to continue operating as hotels and to transact with the public without restriction. (SAC ¶¶ 9, 51; Opinion & Order at 112–

8

13.) Any economic impact on the Hotels therefore flowed, if at all, from the independent actions of third parties rather than from a legal restriction on the Hotels' ability to sell lodging services. Accordingly, the vendor–vendee doctrine does not apply in this context, as the governmental actions at issue did not directly affect the Hotels' capacity to transact with customers. *Cf. Craig,* U.S. at 194–97 (vendor standing where statute expressly restricted vendor sales to direct customers); *Carey v. Population Servs. Int'l*, 431 U.S. 678, 682–85 (1977) (same).

This case also lacks the vendor–vendee relationship that underpinned standing in *Craig* and *Gazzola*. In *Craig*, the vendor sold beer directly to the affected customers and was legally barred by statute from doing so. *Craig*, 429 U.S. at 192–94. In *Gazzola*, the Second Circuit similarly emphasized the close commercial relationship between firearms dealers and their customers, whose ability to purchase firearms depended on dealers' continued participation in the regulated market. *Gazzola,* 88 F.4th at 195–96. Here, by contrast, the Hotels did not transact with asylum seekers at all; their contractual counterparty was RRT and asylum seekers neither selected the Hotels nor paid for lodging. (SAC ¶¶ 14, 121, 141; Dfts. Opp. at 9.) Courts routinely decline to extend vendor standing where, as here, the alleged customers are not the vendor's actual commercial counterparties. *See Kowalski v. Tesmer*, 543 U.S. 125, 131–32 (2004) (rejecting third-party standing absent an existing attorney-client relationship); *Bernard Gelb v. Fed. Reserve Bank of N.Y.*, No. 12 Civ. 4880 (ALC), 2016 WL 4532193, at *3 (S.D.N.Y. Aug. 29, 2016) (declining vendor standing where plaintiff lacked a sufficiently close commercial relationship to assert third-party rights).

The absence of a vendor–vendee relationship is compounded by the absence of constitutionally protected customer conduct. Both *Craig* and *Gazzola* involved customer activity protected by the Constitution—equal protection in *Craig* and Second Amendment rights in

*Gazzola*. *Craig*, 429 U.S. at 197–99; *Gazzola,* 88 F.4th at 197. In *Gazzola*, the Second Circuit emphasized that firearms dealers provide services "necessary to a citizen's effective exercise of Second Amendment rights," and that the challenged statutes threatened to impair customers' ability to acquire firearms through those dealers. *Gazzola*, 88 F.4th at 197; (Dfts. Opp. at 9). No comparable constitutionally protected conduct is implicated here. The Hotels' contractual arrangements with RRT do not facilitate the exercise of any constitutional right, nor do the challenged emergency orders burden any customer's ability to exercise such a right through the Hotels' services. (Dfts. Opp. at 9–10).

At most, the Hotels allege lost contract revenue and litigation expenses—downstream economic effects of governmental action directed at third parties, not restrictions on the Hotels' participation in the lodging market. (Pltfs. Mem. at 4; Dfts. Opp. at 8–10.) Such economic injury, standing alone, is insufficient to establish vendor standing absent regulation of the plaintiff's conduct as a seller. *See Warth*, 422 U.S. at 509; *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126–27 (2014) (standing requires injury within the zone of interests protected by the law invoked).

Accordingly, neither *Craig* nor *Gazzola* supports vendor standing where, as here, the plaintiff is not directly regulated as a seller, lacks a vendor–vendee relationship with the affected third parties, and alleges only incidental economic harm resulting from governmental action directed at others. (Dfts. Opp. at 8–10). Because the governmental actions at issue did not regulate the Hotels as vendors or restrict their ability to engage with customers, reconsideration is unwarranted.

**CONCLUSION**

For the foregoing reasons, Hotel Plaintiffs' Motion for Limited Reconsideration is DENIED in its entirety. The Court respectfully directs the Clerk to terminate the motion at ECF No. 419.

Dated: December 19, 2025
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge